ESTATE OF SCHEIBE: ROBERT HILL FOUNDATION, Appellant, v. LEARMAN, Executor, Respondent.

*January 31—March 1, 1966.*

**118**

For the appellant there were briefs and oral argument by *David L. Walther* of Milwaukee.

For the respondent there was a brief by *E. H. Snyder* of Milwaukee for Arvie H. Learman, executor, concurred in by *Stewart G. Honeck* of Milwaukee, for Arvie H. Learman in his individual capacity, and oral argument by *Mr. Snyder*.

HALLOWS, J.   The issue is whether an executor having a general power of sale without court approval violates his duty as an executor when he sells real property of the estate to his sister for an amount shown by a private appraisal without making any effort to sell such property to others, to obtain a better price or otherwise to determine the going market value of the property.   The trial court thought the duty of an executor under such circumstances was fulfilled by his acting in good faith, using the latter term in a limited sense and synonymous with honesty.   Although an executor is not a trustee in the technical sense, each is a fiduciary and many of the fiduciary duties and responsibilities of a trustee are ap-

plicable to an executor. Restatement, 1 Trusts (2d), p. 19, sec. 6.

In *McKeigue v. Chicago & N. W. R. Co.* (1907), 130 Wis. 543, 546, 110 N. W. 384, we stated an executor in all essential respects will be held to the responsibilities and the duties of a trustee and in a broad sense a trustee is one in whom some estate, interest, or power in or affecting property is vested for the benefit of another. That an executor may be vested with trust powers in respect to part of the estate property in addition to acting as an executor is recognized in Restatement, 1 Trusts (2d), p. 19, sec. 6. Here, the testator granted an identical power of sale of "real estate without special court authority" both to his executors and his trustees. The power of sale without special court authority is a trust power not to be exercised with arbitrary discretion or for the benefit of the executor. By the grant of such power the testator imposed on his executor a special confidence, a discretion coupled with a trust to be exercised solely for the benefit of the *cestuis que* trust.

A trustee or an executor, in whom there has been imposed a special trust or confidence, must act not only honestly or with good faith in the narrow sense but must also exercise the duty of loyalty toward the beneficiary for whose benefit the power of sale is to be exercised and with such care and skill as a man of ordinary prudence would exercise in dealing with his own property. Restatement, 1 Trusts (2d), p. 379, sec. 174. This same idea with respect to a trustee of a testamentary trust was stated by this court in *Estate of Martin* (1963), 21 Wis. (2d) 334, 341, 124 N. W. (2d) 297, as follows:

"However one may handle his personal affairs, a trustee has the duty to keep proper accounts of his stewardship. The responsibility and duties of a trustee are not to be lightly assumed or carelessly executed. Good faith in their performance alone is not sufficient."

Indeed, it has been stated that a trustee who has or procures his appointment as trustee by representing that he has greater skill than a man of ordinary prudence is held to a higher degree of care since he is under a duty to exercise such greater skill in the handling of the trust. Restatement, 1 Trusts (2d), p. 379, sec. 174.

Other jurisdictions in considering the duties of executors in selling real property under a testamentary power of sale have imposed a standard beyond that of good faith. In *Knight v. Nottingham Farms* (1955), 207 Md. 65, 113 Atl. (2d) 382, the court reversed the sale by the executor even though the sale price was in excess of the appraised value in the estate because the executor in selling the property had not acted diligently and prudently. He did not perform the usual functions to obtain the best sale price, such as placing a "For Sale" sign on the property or engaging a real-estate broker, or advertising it or showing it to prospective customers, or canvassing for possible purchasers. In fact, the executor did nothing but remain dormant and receive such offers as might be brought to him, and had made no substantial effort to obtain a better offer. The court pointed out there was no claim of fraud and the contract of sale was entered into in utmost good faith, but the court regarded the issue to be whether the executor acted diligently and not improvidently.

So too, in *Feldman v. Feldman* (1964), 234 Md. 173, 198 Atl. (2d) 257, the court set aside an executor's sale, stating the duty of a fiduciary in selling property of a testator under a testamentary power of sale was "to act in a prudent and business-like manner, with a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances." Consequently, an executor with an unqualified power of sale must exercise the diligence and caution which a careful and prudent owner would observe in the sale of his own property.

The duty of loyalty requires that the executor not be motivated in his actions by self-interest or the interest of third parties. *Noonan Estate* (1949), 361 Pa. 26, 63 Atl. (2d) 80, 83; *Yetzer Estate* (1952), 3 Fiduciary Reporter (Pa.) 469; Restatement, 1 Trusts (2d), p. 364, sec. 170; 2 Scott, Trusts (2d ed.), p. 1208, sec. 170.6; see Anno. 131 A. L. R. 990.

In the present case, the testimony of two appraisers set the value of the property at the time of sale at $28,000 and $30,600. Both of these appraisals were based on the best and highest use of the property which was in an area then being developed into multifamily apartments. The property, at least the land, was suitable for such development. At the time of sale the property consisted of a large home which had an apartment on the first floor, two apartments on the second, and another apartment in a converted coach house and a studio on the second floor of the coach house. The respondent lived in one of the apartments, paying $90 rent to the estate. A few months before the sale his sister, a recent widow, came to live with him in Milwaukee. After the purchase of the property the defendant continued to live in the house but rent free.

The respondent in 1963 at no time offered the property for sale to the public, he engaged no real-estate broker, did not advertise the property for sale either in the newspapers or by putting a sign in front of the property. He made no canvassing of values other than an appraisal by the appraiser who had some years before valued the property for loan purposes. The trial court in its opinion made no finding of the value of the property at the time of the sale, but merely said the price received by the respondent was in keeping "with the market value as disclosed by the appraisal." There is no finding that the market price as disclosed by the appraisal was the fair market price.

Under the facts we believe the executor did not act in a prudent and businesslike manner with a view to

obtaining as large a price as he might with due diligence and attention have obtained. The executor failed in his trust. Bogert, Trusts & Trustees (2d ed.), p. 610, sec. 745. The executor's reasons for conducting the sale in the manner in which he did are insufficient. The failure to consult or hire a broker to save the estate a commission and the fact he had tried to sell the property in 1959 by means of a For Sale sign outside the property for sixty days without success do not justify his nonaction to secure the best price for the property.

In granting an unlimited power of sale, we do not believe the testator intended his executor to be relieved from the duty of acting as a reasonably prudent man with loyalty to beneficiaries. Quite the contrary, the necessity of court approval and its safeguards are dispensed with as needless because of the testator's trust in the executor to act with loyalty and as an ordinary prudent man.

We think the case must be reversed and sent back for further proceedings. Since there was no finding as to the fair market value at the time of the sale, we cannot direct that the executor should be surcharged. It is to be noted the appellant attempted to have Mrs. Musgrave made a party in the lower court so the sale could be set aside rather than having the respondent surcharged. That issue is not before us on this appeal. We believe the trial court should decide after hearing whether the respondent is to be surcharged or whether a suit or proceeding started for setting aside the sale.

*By the Court.*—The order is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.