ARTHUR L. COOPER, JR., et al., Appellants, v NELSON E. JONES, as Executor of LILLIAN C. HARMELINK and Another, Deceased, Respondent.

In the Matter of ESTATES OF WILBUR J. HARMELINK and Another, Deceased. ARTHUR L. COOPER, JR., et al., Appellants-Respondents; NELSON E. JONES, as Executor, Respondent-Appellant.

Fourth Department, January 23, 1981

424

### APPEARANCES OF COUNSEL

*Smith, Murphy & Schoepperle (Richard K. Schoepperle* of counsel), for appellants in Appeal No. 1 and appellants-respondents in Appeal No. 2.

*G. Jeffery Weise* for respondent in Appeal No. 1 and respondent-appellant in Appeal No. 2.

### OPINION OF THE COURT

DILLON, P. J.

In proceedings for an accounting, revocation of letters testamentary and surcharging the executor, petitioners Cooper and White appeal from an order denying their application for revocation and surcharge. In a proceeding to fix attorney's fees, the executor appeals from so much of the order as fixed his attorney's fees at $18,000, a sum approximately $4,000 less than requested, and from that part of the order which granted attorneys' fees and disbursements for the attorneys of petitioners Cooper and White for services found to have been rendered to the estate prior to these proceedings; petitioners Cooper and White appeal from those parts of the order which allowed attorney's fees and expenses for the executor's attorney and denied an allowance of attorneys' fees for their attorneys' services in these proceedings.

Wilbur J. Harmelink willed his entire estate to his wife, Lillian C. Harmelink, and predeceased her. It is the estate of Lillian C. Harmelink, who died testate on June 4, 1973, which has been long delayed in administration. The chief assets of Mrs. Harmelink's estate were farmland of some 76 acres, improved by a house, barn and shed; a piece of lakefront property, improved by a cottage, located across the road from the farmland; and $24,000 which she had placed in account with Norvel Reed and Sons, Inc., shortly before her death. At about the same time, Mrs. Harmelink had entered into a contract to sell the farm to Norvel Reed, Jr. and Ronald Reed for $50,000.

In December, 1973 petitioners Cooper and White offered to purchase the lakefront property for $45,000. In 1974, however, Norvel Reed, Jr. and Ronald Reed brought a proceeding in Surrogate's Court, seeking specific performance of their contract, but claiming that the contract included both the farm and the lakefront property. The executor cross-petitioned for specific performance of the contract for the farm only. On April 14, 1975, on the eve of trial, the attorney for the Reeds notified the court and the attorneys for petitioners Cooper and White that the proceeding by the Reeds had been discontinued.

Thereafter, petitioners Cooper and White renewed their efforts to purchase the lakefront property, and obtained an order requiring the executor to show cause why the lakefront property should not be conveyed to them. On the return day the attorney for the executor did not appear and, as a result, the acting Surrogate, on September 22, 1975, issued a default decree ordering the executor to convey the lakefront property to petitioners Cooper and White.

The executor moved to open the default and on October 20, 1975 the acting Surrogate heard argument on the motion and also on the petition for specific performance. An order was entered on February 23, 1976 which annulled the September 22, 1975 order; dismissed the Reeds' petition for specific performance on the ground that the Reeds had discontinued on the merits; determined that the Reeds had no interest in the lakefront property; and granted the executor's counterpetition for specific performance. The Reeds appealed from that order and we affirmed the Surrogate's

determination that the Reeds had discontinued on the merits, but judgment on the counterpetition was annulled *(Reed v Jones*, 57 AD2d 1054).

In November, 1977 the Surrogate ordered both properties to be listed with a real estate broker. The executor did not list the farm property, but in February, 1978 he submitted for the Surrogate's approval bids by one Craig Kinney of $35,000 for the farm property, and, through a broker, by one John Cooper of $45,000 for the lakefront property. After rejecting the bids, the Surrogate ordered that sealed bids be submitted to the court. The highest bidder was a Mr. Anthony Bandur who submitted a bid of $101,000 for both parcels. The closing with Bandur was delayed from April, 1978 until October, 1978 because the Reeds filed a notice of pendency against the properties, thus prompting Bandur to commence an action for damages in Federal court against the Reeds and the executor.

At the present time, all of the assets of the estate have been liquidated. In addition to the Federal court action, there is also pending an action brought by the executor against the Reeds for an accounting of the farm profits. The latter action was commenced by the executor subsequent to the bringing of these proceedings for accounting, revocation of letters and surcharging.

Petitioners Cooper and White charge the executor with various breaches of his fiduciary duty. They attribute to him the delay in selling the estate properties, asserting that he has neglected to resist and put an end to the various frivolous suits commenced by the Reeds, and has, in fact, because of his blood and business relationship to the Reeds, colluded with them to the detriment of the estate. The other claimed breaches of duty are: (1) the executor knowingly permitted the Reeds to manage the farm and keep all the rentals therefrom during the years since Mrs. Harmelink died, while at the same time the executor expended estate funds to pay the carrying charges thereon; (2) the executor left the lakefront property lay vacant during all of this period of time while it could have been rented for $250 to $350 per month; (3) the executor allowed the $24,000 to remain in a noninterest-bearing account until this sum was

finally exhausted by various expenditures, including payment of carrying charges upon the real property; and (4) the executor failed to list the farm property with a broker although ordered to do so by the Surrogate.

An executor owes the estate he administers his absolute loyalty and honesty (*Matter of Rothko*, 43 NY2d 305). While the executor's relationship with the Reeds might suggest a conflict of interest, we believe that the Surrogate was correct in his reasoning on this issue. Under the will of Mrs. Harmelink, her estate was bequeathed and devised as follows: 25% to Arthur L. Cooper, her brother and one of the petitioners herein; 25% to Marion Cooper White, her sister and the other petitioner herein; 25% to Eunice Harmelink Reed, the sister of her deceased husband; and 12½% each to Nelson E. Jones, the executor, and Arlene Jones Wynn, respectively her nephew and niece by marriage. The testatrix was also the aunt, by marriage, of the Reeds. Thus, as pointed out by the Surrogate, all of the parties are related by blood or by marriage, and any claimed co-operation between the executor and the Reeds would have been against the executor's self-interest. It is also to be noted that the contract relied upon by the Reeds was not made by the executor but was made by the testatrix during her lifetime. While petitioners contend that the executor could have sold both properties in 1975, the Surrogate's conclusion that the delay in selling was caused by the Reeds is not contrary to the evidence (cf. *Matter of McGillivray*, 138 NY 308).

The evidence does show, however, that the executor allowed the Reeds to manage the farm and keep the rentals derived therefrom, while the excutor paid the carrying charges upon the farm. It is claimed by the Reeds that this arrangement was pursuant to an oral agreement made by them with the testatrix at the time the purchase contract was executed. The Surrogate erred, however, in admitting evidence of an oral agreement with the testatrix since the witness Ronald Reed was clearly an interested person (see CPLR 4519). In any event, the testimony improperly received did not establish that the Reeds were to keep the rentals without paying the charges, or that the arrangement was to be for any extended period of time. Thus we cannot agree with the Surrogate's conclusion that it was

not unreasonable for the executor to delegate the responsibility of management of the farm to the Reeds, especially since it had become apparent that the closing of the sale of the farm to the Reeds would be delayed and might never be consummated. Here the farm and the farm buildings were rented to tenants while the estate was being administered. Undeniably then, those rentals were estate assets. It was the duty of the executor to collect these assets and he failed to do so; and for this dereliction he should be surcharged *(Matter of McKeogh,* 151 Misc 327, affd 245 App Div 750). The record is insufficient now to determine the amount of the surcharge.

We do not think it proper to surcharge the executor for failure to obtain rentals from the lakefront property. The evidence shows that he did not take possession of or manage that property. "The statutory power given all fiduciaries 'to take possession' and 'manage' real property (EPTL 11-1.1, subd. [b], par. [5], cl. [A]) is however discretionary, not mandatory. He may refuse to do so leaving that responsibility to the devisees or the residuary beneficiaries" *(Matter of Saphir,* 73 Misc 2d 907, 912). While we do not adopt the foregoing as a rule applicable in all events and in all cases, particularly where, as here, the piece of realty is capable of producing income (see *Matter of McKeogh, supra),* we note that none of the beneficiaries was under a disability. We further note that the property was essentially a summer residence and an executor must be given a certain amount of discretion in determining whether a lease or rental would have an adverse impact on the salability of the property.

■ An executor must invest cash funds of an estate in an interest-bearing account unless they are to be used to pay claims and expenses within a reasonably short period of time *(Matter of d'Espinay-Durtal,* 4 AD2d 141). Here, the executor allowed the cash to remain in a noninterest-bearing account from the time of his appointment until July, 1977 when the fund was finally exhausted. For this loss of interest, the executor should be surcharged. Since the record does not disclose the dates on which payments were made from this account, or the items for which payments were made, the amount of the surcharge will have

to be determined by the Surrogate and may be computed on the basis of prevailing rates of interest paid by savings banks *(Matter of d'Espinay-Durtal, supra)*.

It was not until November, 1977 that the Surrogate ordered the executor to list the properties with a broker. Three months later the executor submitted for approval by the Surrogate the offers he had received for the properties. Since the executor had personally received an offer for the farm property, his explanation that his failure to have listed it was motivated by a desire to save broker's commissions has some semblance of reasonableness. In any event, the action by the Surrogate removed the sale of these properties from the executor's hands, and there is no showing that the failure to list the farm with a broker caused any loss to the estate.

██ Even though we find that the executor should be surcharged for the farm rentals and the interest on the funds of the decedent, we do not believe that the Surrogate abused his discretion in refusing to revoke his letters. The removal of an executor is a determination within the discretion of the Surrogate (SCPA 713; *Matter of Simon*, 44 AD2d 570) and the power to revoke should be exercised sparingly *(Matter of Israel*, 64 Misc 2d 1035). The executor has not been charged with diverting estate funds to himself, or with any incapacity. Since the assets of the estate have been liquidated and safely invested, the only remaining impediment to distribution, other than proceedings required hereunder, is the Federal court action brought by Bandur. Thus it would be unwise now to burden the estate with the additional expense which would flow from the appointment of a substitute executor.

██ Turning to the question of attorney's fees, it was the petitioners' attorneys, and not the executor's, who defended successfully the appeal to this court brought by the Reeds. The services of petitioners' attorneys were of large benefit to the estate and the Surrogate properly awarded compensation therefor out of estate funds *(Matter of Bellinger*, 55 AD2d 448; *Matter of Graves*, 197 Misc 638).

Of an estate of approximately $105,000, the Surrogate has already awarded a total of $33,000 in attorneys' fees;

$18,000 for the executor's attorney and $15,000 for petitioners' attorneys. The Surrogate took into consideration the services performed by the executor's attorney and reduced the claimed amount of $22,432.50 to $18,000. Since the latter attorney provided a number of services to the estate aside from his actions in connection with the Reed litigation, we find no reason to disturb the Surrogate's determination of his fees.

Petitioners argue that the award of $15,000 is inadequate for the services performed in the specific performance litigation and the appeal thereon, and that petitioners should be awarded additional fees for the instant proceedings. We disagree. The fixing of attorney's fees is a matter of discretion of the Surrogate and he may consider the size of the estate in fixing the fees (*Matter of Freeman*, 40 AD2d 397, affd 34 NY2d 1). At the initiation of these proceedings, the Surrogate made it very clear to the petitioners that he would be so guided in this case, and warned them that they may be proceeding at their peril if extensive counsel fees were incurred.

The order denying petitioners' application to revoke letters testamentary and to surcharge the executor should be modified in accordance with this opinion and the matter should be remitted to the Surrogate for further proceedings consistent herewith.

The order awarding attorneys' fees and expenses to petitioners and to the executor should be affirmed.

CARDAMONE, SCHNEPP, CALLAHAN and MOULE, JJ., concur.

Order unanimously modified and as modified affirmed without costs, and matter remitted to Surrogate's Court for further proceedings, in accordance with opinion by DILLON, P. J.