In the MATTER OF the ESTATE OF Frances KUGLER,
Deceased,
William F. HEGNER, Appellant,

v.

Anna VAN ROSSUM ESTATE, St. Joseph Indian School,
Indian Mission of St. Labre, Sacred Heart Church,
Mrs. Eugene (Rose Mary) Koehn (Rose Mary Good-
win), and the Ohio Casualty Insurance Company,
Respondents.†

Court of Appeals

*No. 82–641. Submitted on briefs November 15, 1982.—
Decided January 25, 1983.*
(Also reported in 330 N.W.2d 622.)

† Petition to review granted.

348

For the appellant the cause was submitted on the briefs of *Roger R. Hall* of Appleton.

For the respondents the cause was submitted on the joint brief of *McKenzie, Hebbe, Downey & Kellogg, S.C.,* of Appleton, attorneys for the respondents, Anna Van Rossum Estate, St. Joseph Indian School, Indian Mission of St. Labre and Sacred Heart Church; and *Peter D. Humleker, III,* of Neenah, attorney for Rose Mary Goodwin.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  William Hegner appeals from a judgment settling the final account of the Frances Kugler estate, which assessed liability against him in the form of an interest surcharge for failing to invest accumulated estate funds in secure, interest-bearing investments. We conclude that the trial court assessed an incorrect rate of post-decision interest, and we modify the judgment accordingly. Because we also conclude that the court did not abuse its discretion in charging Hegner with interest on funds on hand or in determining the rate of interest charged, and because the court did not exceed its jurisdiction, we affirm the judgment as modified.

Frances Kugler died testate on October 18, 1967. On November 28, 1967, Hegner, who was a practicing attorney, was appointed administrator with will annexed of Kugler's estate. The inventory filed on June 24, 1968, showed the estate had a total value of $74,842.81, including approximately $41,000 that Kugler had invested in interest-bearing investments.[1]  By October, 1968, Heg-

---

[1] These investments included U.S. savings bonds, certificates of deposit, and a passbook savings account.

ner had liquidated most of the estate's assets and apparently deposited approximately $62,000 in cash in two noninterest-bearing checking accounts[2] after paying funeral and miscellaneous administration expenses.

In 1968, a petition for construction of Kugler's will was filed on behalf of one of the beneficiaries. The probate court rendered a decision on this petition in 1970, which was appealed to the Wisconsin Supreme Court. The supreme court issued its decision in 1971 and subsequently denied a motion for reconsideration. An ensuing controversy concerning appeal costs was settled in 1973. During and after the petition and appeal, most of the liquidated estate assets remained in noninterest-bearing accounts.

On April 30, 1976, certain beneficiaries petitioned the court to dismiss Hegner as administrator because he had not filed a final account or closed the estate. The court granted the petition and appointed Frank Manders as successor administrator on May 11, 1976. The court also ordered Hegner to turn over all records, assets, and information he possessed concerning the estate. Hegner filed a preliminary final account on September 2, 1976, which revealed he had made prior distributions of $43,-058.92. Hegner tendered two cashier's checks to Manders totaling $20,000, which represented the remaining liquidated estate assets.

On October 10, 1979, the successor administrator filed a petition for approval of the final account. The benefi-

---

[2] The record does not include records to substantiate Hegner's testimony that he deposited the funds in checking accounts. Although the trial court repeatedly ordered Hegner to produce records from his administration, there is no evidence that Hegner ever produced any cancelled checks, deposit slips, or bank statements relating to these accounts. The record also does not indicate that Hegner made such items available to the successor administrator.

ciaries subsequently filed objections to the final account based on the preliminary final account Hegner had filed for the period between October 18, 1967, and May 21, 1976. One objection concerned Hegner's alleged failure to account for interest earned or that should have been earned on the liquidated estate assets during his administration. After a hearing, the court concluded that Hegner had breached his fiduciary duty by failing to invest the liquidated estate assets in secure, interest-bearing investments and that this breach had damaged the estate. The court charged Hegner with interest in the amount of $52,520,[3] comprised of $33,818 that could have accrued on $60,000 of estate funds from October 30, 1968, to June 30, 1976, and $18,702 that could have accrued on the $33,818 interest from July 1, 1976, to December 31, 1981.

Hegner argues that the trial court abused its discretion in charging him with interest on the liquidated estate funds for the period of his administration. A trial court's allowance of an administrator's final account and charges upon that account is within its discretion, and its determination will be upheld unless it abused that discretion. *See Will of Rosnow,* 273 Wis. 438, 442, 78 N.W.2d 750, 752 (1956). It is also within a trial court's discretion after considering all relevant circumstances to charge an executor or administrator with interest that could have been earned on funds on hand when the administrator has permitted them to lie idle. *Estate of Baldwin,* 18 N.W.2d 827, 836 (Mich 1945). Discretionary determinations will be upheld if they are reasonable conclusions based upon a consideration of the

---

[3] The court also charged Hegner with an additional $2,303.44 in interest for filing a late Wisconsin inheritance tax return. Hegner does not dispute his liability for this charge.

appropriate law and the facts of record. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981).

Although an executor or administrator is technically not a trustee, he is a fiduciary, and many of a trustee's duties apply to him. *Estate of Scheibe,* 30 Wis. 2d 116, 118–19, 140 N.W.2d 196, 198 (1966). An administrator's statutory duties include managing the estate, sec. 857.03, Stats., and he must exercise ordinary care and good faith in performing his administrative duties. *See Estate of Meister,* 71 Wis. 2d 581, 601, 239 N.W.2d 52, 62 (1976).

We have not found nor have the parties cited any Wisconsin cases in which interest has been charged against an administrator under circumstances analogous to this case. Our supreme court has stated, however, that when a trustee has received no interest, he is not chargeable with interest in the absence of special circumstances warranting a charge, such as failure to invest and to make the funds productive. *Will of Gehring,* 179 Wis. 589, 593–94, 192 N.W. 36, 37–38 (1923).

Other jurisdictions have held that one of the primary duties of a fiduciary is to make funds under his management productive and not to keep them "laid up in a napkin." *In re Kruger's Estate,* 139 Misc. 907, 908 (N.Y. 1931). An administrator has a duty to take reasonable steps to preserve the estate assets, which may require him to prevent a deterioration in value. *Estate of Gerber,* 73 Cal. App. 3d 96, 111 (1977). When an administrator has breached his fiduciary duty by allowing funds to lie idle, which with reasonable diligence he could have invested and received interest, he should be charged for the amount of interest that could have been earned unless circumstances did not justify investment. *See In re Eddy's Estate,* 134 Misc. 112, 116–17 (N.Y. 1929) ; *Fitchard v. Hirschberg's Estate,* 272 P. 906, 911 (Ore. 1928).

Such circumstances include a need to immediately use the funds to meet necessary and current administration expenses,[4] or when it is apparent that there will be no sizeable delay in settling the estate, and the administrator therefore will only hold the funds for a brief time.[5]

Under the circumstances of this case, the trial court's decision to impose an interest surcharge on Hegner for failure to make the estate funds productive was reasonable and did not constitute an abuse of discretion. Hegner was appointed administrator in November, 1967. In 1968, after Hegner had liquidated most of the assets, the will construction litigation commenced. This controversy and a dispute arising from this controversy were not settled until 1973. Hegner was aware of the suit and reasonably could have expected a substantial delay in settling the estate once the litigation began.[6]

After the litigation was resolved, there was an additional, unexplained three-year delay prior to Hegner's dismissal as administrator. The record indicates that after Hegner paid miscellaneous administration expenses in 1967, there were no distributions of the funds until he made partial distributions in 1974 or 1975 and 1976. In 1968, Hegner had a substantial sum of money in excess of the immediate needs of administration, part of which he had withdrawn from interest-bearing accounts and allowed to remain totally unproductive for at least six years. An administrator exercising reasonable diligence would not allow substantial sums to lie idle at a loss to the estate when it is obvious that there will be an

---

[4] See In re Eddy's Estate, 134 Misc. 112, 117 (N.Y. 1929).

[5] See Estate of Lapinsky, 132 S.E.2d 765, 771 (W. Va. 1963).

[6] Hegner assisted in the appeal and motion for reconsideration to the supreme court, and he later testified that he did not file Wisconsin inheritance tax returns for the period between 1967 and 1976 because "the estate was still up in the air. We didn't know whom the estate was going to go to."

extended delay in settling the estate. The imposition of a duty to make the funds productive is also reasonable in this case because, as the trial court noted, Hegner is a professional with experience in probate matters.

In imposing an interest surcharge on Hegner, the trial court did not define Hegner's fiduciary duty as including an obligation to invest the estate funds in speculative, high-risk investments, and we agree with that assessment. The court only determined that Hegner had a duty to invest the funds in excess of amounts needed for current administration in secure investments. It then calculated the surcharge based on interest that could have been earned from a passbook savings account and treasury bills, which could have been liquidated and distributed upon twenty-four hours' notice. Given the obvious and lengthy delay in settling the estate, the court's action was reasonable, and it did not impose an inequitable burden on Hegner. Such action is also consistent with Hegner's recognized duty to take reasonable steps to make the funds productive[7] and his statutory duty to manage the estate.

Hegner argues that the trial court abused its discretion in arriving at an interest surcharge rate in excess of the five percent per annum legal interest rate set forth in sec. 138.04, Stats.[8] We disagree. The rate was calculated based on alternating the investment between a

---

[7] *See Will of Gehring,* 179 Wis. 589, 593–94, 192 N.W. 36, 37–38 (1923).

[8] Section 138.04, Stats., provides:

Legal rate. The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in s. 138.05, in which case such rate shall be clearly expressed in writing.

passbook savings account and treasury bills. The court's acceptance of this calculation was a reasonable accommodation of the competing interests involved in the need to compensate the beneficiaries for their loss of income because of Hegner's breach of his fiduciary duty, and the need to assure that the duty imposed on Hegner was reasonable. The court also appropriately recognized Hegner's experience as an attorney, and it was not unreasonable to hold Hegner to a standard of management that involves an awareness of secure investment options. In addition, there is nothing in the language of sec. 138.04 to indicate that it must govern the rate of an interest surcharge imposed on an administrator to compensate the estate for a financial loss incurred because of the administrator's breach of fiduciary duty.[9]

Hegner asserts that the beneficiaries' claim for interest is barred by laches and estoppel because they engaged in unreasonable delay in prosecuting their claim. We disagree. When the trial court appointed the successor administrator, it also ordered Hegner to turn over all records relating to his administration to enable Manders to prepare a complete accounting. The record indicates, however, that Hegner never provided Manders either at the time of Manders' appointment or during his administration with any bank statements, deposit slips, or

---

[9] Hegner cites *Will of Gehring*, 179 Wis. 589, 192 N.W. 36 (1923), to support his contention that a fiduciary should not be charged with more than 5% per annum interest. In *Gehring*, the executrix was a farmer's wife who was unaccustomed to business. The court refused to impose a duty on her to invest estate funds in order to yield 5% interest instead of the 3% she had obtained. The court noted, however, that she was statutorily authorized to invest the funds in government bonds. At the time she acquired the funds, she could not have invested in government bonds that would have yielded a return greater than 3%. We also note that Hegner's experience as an attorney is hardly comparable to the executrix's background in *Gehring*.

cancelled checks from the estate accounts Hegner had apparently set up. Manders therefore had little information concerning the estate accounts during Hegner's administration to use in calculating possible interest lost to the estate.

When Manders filed his petition for approval of the final account in 1979, Hegner still had failed to provide essential information concerning the accounts he had managed. Although the beneficiaries lacked this essential information, they had to take advantage of this final opportunity to object either before or at the hearing, and they promptly filed their objections five days after Manders filed his petition. Their failure to file the objections at an earlier date is excusable in light of Hegner's unreasonable delay and neglect in providing specific records.

Hegner also contends that he was prejudiced because the estate was not settled until five and one-half years after his dismissal, and the $18,702 in interest assessed against him was calculated to cover the period from his dismissal to the time the estate was settled.[10] There is no evidence, however, that Manders was negligent in failing to settle the estate at an earlier date or that the estate should have been settled sooner. In addition, the delay between 1979 and 1982 was necessary in order to resolve the beneficiaries' objections to Hegner's administration of the estate.

---

[10] The $18,702 in interest is based on an assumption that had Hegner properly invested the liquidated funds in excess of current administration costs, he would have turned over approximately $33,818 in interest earned to the successor administrator, which could then have been invested and have earned interest. Even if one assumes that Hegner would have distributed part of the $33,818 in interest prior to his dismissal, the beneficiaries could have deposited their shares and earned interest. They were denied such opportunity because of Hegner's breach of his fiduciary duty.

Hegner argues that the judgment should be reversed or a new hearing granted in the interest of justice because he was not represented by counsel at the January 13, 1982, hearing on the objections to the final account. Hegner also contends that reversal is warranted because the trial court did not grant him a postponement at the hearing.

We will not grant a new trial in the interest of justice unless there has been a probable miscarriage of justice. *Chapnitsky v. McClone,* 20 Wis. 2d 453, 467, 122 N.W.2d 400, 407 (1963). In addition, a trial court's denial of a continuance is discretionary, and its ruling will not be reversed unless prejudice is shown. *Allen v. Allen,* 78 Wis. 2d 263, 274–75, 254 N.W.2d 244, 250 (1977).

We conclude that there has not been a probable miscarriage of justice to warrant a new hearing or a reversal. *See* sec. 752.35, Stats. We also conclude that the trial court did not abuse its discretion and that Hegner was not prejudiced by the denial of his request for a postponement. Charles Hartzheim asked to withdraw as Hegner's counsel at the pretrial conference on November 13, 1981. Hartzheim subsequently filed a petition to withdraw on November 18, 1981, which the trial court granted that same day. The record contains an affidavit of mailing, which states that notice of Hartzheim's withdrawal was mailed to Hegner on November 25, 1981.

On December 3, 1981, Hegner received copies of the court's order summarizing the pretrial conference and notice of hearing setting January 13, 1982, as the hearing date. Hegner wrote a letter to the trial court on December 11, 1981, expressing confusion concerning his possible lack of representation. Hegner did not, however, file a written motion requesting a continuance at any time prior to the January 13 hearing. Hegner also offers no explanation for his inability to obtain new counsel or his failure to file a motion for a continuance. Although

the court did not respond to Hegner's letter, Hegner had at least six weeks to obtain another attorney and to prepare for the January 13 hearing. Hegner is also an experienced attorney[11] and, contrary to his assertions, he did participate in the hearing by making a statement to the court and by asking questions of Manders during cross-examination.

Hegner also contends that the judgment should be reversed because the trial court exceeded its jurisdiction. Hegner asserts that the proceedings against him constituted an action on the administrator's bond, and that the beneficiaries' failure to request permission to sue on the bond pursuant to sec. 321.02(5), Stats., resulted in the court having no jurisdiction to render the judgment.[12]

We conclude that the trial court did not exceed its jurisdiction, and the judgment therefore is valid. Chapter 321, Stats., was repealed effective April 1, 1971.[13] Although several provisions of ch. 321 were recreated in ch. 878, Stats., sec. 321.02(5), which required application for permission to sue on the bond, and sec. 321.04, which allowed the court to grant permission to sue, were omitted from ch. 878. In addition, the Court Reform Act, ch. 449, Laws of 1977, abolished county courts, which traditionally exercised probate jurisdiction, and created circuit courts as the single-level trial court in Wisconsin. It was therefore possible for the court in this case to exercise its general jurisdiction and render a judgment in favor of Ohio Casualty Co., the surety on the bond, and against Hegner, the principal.

[11] In his December 13, 1979, deposition Hegner testified that he had been licensed to practice law in Wisconsin for 41 years.

[12] The trial court also granted judgment for the amount of the bond in favor of Ohio Casualty Co., the insurer on Hegner's bond, and against Hegner, the principal.

[13] Chapter 339, § 23, Laws of 1969.

An action on Hegner's bond also was not necessary. Ohio Casualty was represented at the hearing at which Hegner's liability was determined. Ohio Casualty stipulated to the court's general jurisdiction, thereby waiving any prerequisites to an action on the bond, and agreed to immediately pay the amount of the bond after Hegner's liability was assessed instead of waiting for an action on the bond. Ohio Casualty therefore participated in the hearing and had an opportunity to present any defenses it could have asserted had the beneficiaries been forced to commence an action on the bond.

Hegner was not prejudiced by the court's exercising jurisdiction over Ohio Casualty Co. The court's determination of Hegner's liability was binding on Ohio Casualty in a subsequent action on the bond. *O'Neill v. Maryland Casualty Co.*, 238 Wis. 529, 531, 300 N.W. 167, 168 (1941). Hegner therefore would not have been a necessary party to a separate action on the bond against Ohio Casualty Co. *See id.* at 532, 300 N.W. at 168.

Hegner contends that he is entitled to compensation for services rendered as administrator. The record does not reflect that Hegner requested compensation or submitted a claim for fees to the trial court. At the January 13 hearing, the trial court asked whether Hegner had been compensated for his services. The court was told that it was within its discretion to award or deny Hegner such fees. The court then allowed Manders compensation for his services as successor administrator.

Although sec. 857.05 (2), Stats., provides that the court may allow compensation to a personal representative for services rendered, it also states that the court may deny compensation if the personal representative has been derelict in his duties. *See also Will of Leonard*, 202 Wis. 117, 128, 230 N.W. 715, 719 (1930). In this case, the trial court did not grant Hegner compensation for ser-

vices after it determined that he had breached his fiduciary duty. The court therefore essentially denied Hegner fees for services because Hegner had been derelict in his duties as administrator. This denial was reasonable in light of Hegner's failure to make the estate funds productive and to maintain and turn over clear and distinct records concerning his administration.

Hegner asserts that the trial court erred in assessing prejudgment interest against him from July 1, 1976, through December 31, 1981. The $18,702 that the court calculated for that period is not, however, interest on damages but is itself part of the damages or loss that the court determined the estate had sustained because of Hegner's breach of his fiduciary duty. The general rules applicable to prejudgment interest are therefore inapplicable.

Hegner finally argues that the trial court erred in allowing post-judgment interest from the January 13, 1982, hearing at the greater of ninety-day treasury bill rates or bank passbook savings rates. Hegner contends that the applicable interest rate is twelve percent. Section 815.05(8), Stats.

We conclude that the appropriate rate of interest from the time of the trial court's decision on January 13 to recovery is seven percent. *See* secs. 814.04(4) and 815.-05(8), Stats. Although secs. 814.04(4) and 815.05(8) were amended to provide for twelve percent interest, this change applies only to actions commenced on or after the effective date of the act, which is May 11, 1980. Chapter 271, sec. 5, Laws of 1979. Since the objections to the final account were filed in 1979, the change from seven percent to twelve percent interest does not apply in this case. We therefore modify the judgment to provide for seven percent interest from the date of the trial court's decision.

*By the Court.*—Judgment modified and, as modified, affirmed, with costs to respondents.