In the MATTER OF the ESTATE OF Frances Koehn KUGLER,
Deceased: William F. HEGNER, Appellant-Petitioner,

v.

Anna VAN ROSSUM ESTATE, St. Joseph Indian School,
Indian Mission of St. Labre, Sacred Heart Church,
Mrs. Eugene (Rose Mary) Koehn (Rose Mary Good-
win) and the Ohio Casualty Insurance Company,
Respondents.

Supreme Court

*No. 82–641. Argued January 3, 1984.—
Decided February 28, 1984.*

(Also reported in 344 N.W.2d 160.)

For the petitioner there was a brief by *Roger R. Hall*, Appleton, and argument by *Mr. Hall.*

For the respondents there was a joint brief, in court of appeals, by *Thomas B. McKenzie, and McKenzie, Hebbe, Downey & Kellogg, S.C.,* Appleton, and *Peter D. Humleker, III,* Neenah, and oral argument by *Thomas B. McKenzie.*

WILLIAM A. BABLITCH, J. William Hegner, administrator of the Frances Kugler estate, seeks review of a published decision of the court of appeals[1] affirming a judgment of the circuit court for Outagamie county, Judge Urban P. Van Susteren. The circuit court assessed an interest surcharge against Hegner for his failure to invest estate funds in interest-bearing investments during his administration of the estate.

The issues presented for review are:

(1) During Hegner's administration of the estate, did he have a duty to reasonably invest accumulated estate funds?

(2) If so, did the circuit court abuse its discretion in determining an interest surcharge against Hegner based on interest the estate could have earned by alternating the investment between a passbook savings account and treasury bills?

(3) If Hegner was properly charged for interest he could have earned for the estate during his administration, was he also properly charged for interest that could have been earned on that interest from the date of his removal as administrator until the estate was closed?

We hold that under the circumstances of this case, Hegner had a duty to reasonably invest the accumulated estate funds not needed to meet current estate claims and administration expenses. Because his failure to do so constituted a breach of that duty, the circuit court did not abuse its discretion in assessing an interest surcharge against Hegner. We also hold that under the circum-

---

[1] *Estate of Kugler,* 111 Wis. 2d 347, 330 N.W.2d 622 (1983).

stances in this case, the circuit court did not abuse its discretion in determining an interest surcharge based on interest the estate could have earned by alternating the investment between a passbook savings account and treasury bills. Finally, we hold that Hegner was properly charged not only for interest he could have earned for the estate during his administration, but also for interest that could have been earned on that interest from the date of his removal until the estate was closed. We affirm the decision of the court of appeals.

*Background*

Frances Kugler died on October 18, 1967. Her will specified that the National Manufacturer's Bank of Neenah was to be appointed as executor of her estate. The bank declined to serve as executor. On November 28, 1967, Hegner was appointed administrator with will annexed of Kugler's estate. At the time of his appointment, Hegner was licensed to practice law in the state of Wisconsin, and had prior experience handling probate matters.

On June 24, 1968, Hegner filed an inventory for the estate, which revealed that the estate had a value of $74,842.81. This amount included approximately $41,000 that Kugler had invested in interest-bearing investments, including certificates of deposit, U.S. savings bonds, and a passbook savings account. Hegner liquidated most of the estate assets by October, 1968, including the $41,000 that Kugler had invested in interest-bearing investments. After Hegner used some of the estate funds to pay funeral and other administration expenses, he claims that he deposited approximately $62,000 in cash in two checking accounts, neither of which earned interest.[2]

---

[2] Although Hegner claims that he deposited this money in checking accounts, he never produced any cancelled checks or deposit slips to substantiate his claim.

In March, 1968, one of the beneficiaries named in Kugler's will filed a petition for construction of the will. The probate court issued its decision construing Kugler's will in June, 1970. On July 28, 1970, that decision was appealed to this court, which rendered a decision on November 2, 1971. This court denied a motion for reconsideration of the November 2 decision on January 28, 1972. During the controversy surrounding construction of the will, Hegner never invested any of the $62,000 of estate funds in interest-bearing investments for the benefit of the estate.

By April, 1976, Hegner had neither closed the Kugler estate nor filed a final account. On April 30, 1976, certain beneficiaries petitioned the probate court to remove Hegner as administrator. The court granted the petition and appointed Attorney Frank Manders as successor administrator on May 11, 1976. The court also ordered Hegner to turn over all records, assets and information concerning the estate. Manders immediately prepared a preliminary final account, dealing with Hegner's administration of the estate. The preliminary final account, which was filed on September 2, 1976, revealed that Hegner had made distributions to beneficiaries totaling $43,058.92 in the previous two years and that the cash on hand was $20,179.27. Hegner subsequently tendered two cashier's checks to Manders totaling $20,000.00.

On October 10, 1979, Manders filed a petition for approval of the final account. On October 30, 1979, beneficiaries filed objections to the preliminary final account that was filed in 1976. The objections included Hegner's alleged failure to account for the disposition of inventoried assets and his alleged failure to account for interest earned or that should have been earned on the liquidated assets. The court entered an order requiring Hegner to appear at a deposition and to bring to the deposition all records relating to his administration of

the Kugler estate. Although Hegner appeared at the deposition, he supplied no bank statements or cancelled checks from the checking accounts in which he claimed he had deposited the estate funds during his administration.

After a hearing on the objections to the preliminary final account, the court held that Hegner had breached his fiduciary duty by failing to invest the liquidated estate assets. The court imposed an interest surcharge on Hegner in the amount of $52,520, comprised of $33,818 that could have accrued on $60,000 of estate funds from October 30, 1968, to June 30, 1976, and $18,702 that could have accrued on the $33,818 in interest from July 1, 1976, to December 31, 1981. The surcharge was determined by calculating the interest the estate could have earned during that period by alternating the investment between a passbook savings account and treasury bills. The court also charged Hegner an additional $2,303.44 for interest and penalties incurred for the late filing of a Wisconsin inheritance tax return.[3]

Hegner subsequently appealed to the court of appeals, which modified the judgment and affirmed the judgment as modified.[4] Hegner filed a petition for review, which we granted.

*Duty To Invest*

Although an executor or administrator is technically not a trustee, he or she is a fiduciary, and many of the fiduciary duties and responsibilities of a trustee are ap-

---

[3] Hegner does not dispute his liability for this charge.

[4] In the judgment, the circuit court indicated that the amount awarded in the judgment would bear interest at the rate of 90-day treasury bills or at a bank passbook savings rate, whichever was greater. The court of appeals modified the judgment to provide for 7 percent post-judgment interest. The parties do not challenge this modification on this review.

plicable to an executor. *Estate of Scheibe,* 30 Wis. 2d 116, 118–119, 140 N.W.2d 196 (1966). Whether those duties ordinarily include an obligation on the part of an administrator to invest accumulated estate funds is an issue of first impression in Wisconsin. That such a duty ordinarily exists, however, is evident from both a prior decision by this court and statutes governing the general duties and responsibilities of administrators and personal representatives.

In *Will of Gehring,* 179 Wis. 589, 593–94, 192 N.W. 36 (1923), we stated that if a trustee, including an executor or administrator, has received no interest from estate assets, he or she is not chargeable with interest absent special circumstances. One special circumstance cited was the failure to invest and make estate funds productive. 179 Wis. at 594. Because the executrix in *Gehring* had invested certain estate assets and earned interest for the estate, we held that she had satisfied her duty to make the estate productive even though a higher rate of interest might have been earned on that investment.

The general statutory duties of a personal representative are set forth in sec. 857.03, Stats. One duty listed is the obligation to manage the estate. In managing property for the estate, a personal representative is subject to the "prudent person rule" set forth in sec. 881.01 (1), which provides in part:

"INVESTMENT: prudent person rule. Personal representatives, guardians and trustees may invest the funds of their trusts in accordance with the provisions pertaining to investments contained in the instrument under which they are acting, or in the absence of any such provision, then within the limits of the following standards:
"(1) In acquiring, investing, reinvesting, exchanging, retaining, selling and *managing property* for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which

persons of prudence, discretion and intelligence exercise in the management of their own affairs . . ." (Emphasis added.)

Based on the foregoing, we hold that an administrator's duty to manage the estate as a prudent person ordinarily includes a duty to reasonably invest estate funds not needed to meet current estate claims and administration expenses. Whether this duty arises depends on the circumstances of each case, including, but not limited to: whether the amount of funds in excess of those needed in the immediate future to pay claims of the estate and administration expenses makes investment practical; the economic conditions of the marketplace; and whether it is foreseeable that the estate will remain open for a period of time that will make investment practical. We emphasize that the duty to make the estate productive does *not* mean that an administrator should invest estate funds in speculative, high-risk investments in order to obtain the highest possible interest rate. In determining whether an investment, when made, is reasonable, the question to be resolved is not whether a greater return on the investment could have been realized; rather, the question to be resolved is whether under the circumstances then present, the administrator exercised the judgment and care that ". . . persons of prudence, discretion and intelligence exercise in the management of their own affairs . . . ." *See* sec. 881.01(1), Stats. If an administrator breaches the duty to make the estate productive, the trial court may, in its discretion, assess a surcharge against the administrator to compensate the estate for interest that could have been earned had the duty been fulfilled.

Our holding that an administrator ordinarily has a duty to reasonably invest estate funds is consistent with

the holdings of courts in other jurisdictions. *See, e.g., Cooper v. Jones*, 78 A.D.2d 423 (N.Y. 1981); *Estate of Vaughn*, 461 A.2d 1318 (Pa. Super. 1983). These courts have generally concluded that when an administrator has breached his or her fiduciary duty by allowing accumulated funds to lie idle, the administrator should be charged for interest that the estate could have earned unless circumstances did not warrant investment. *See, e.g., In re Eddy's Estate*, 134 Misc. 112, 116–17 (N.Y. 1919); *Cooper v. Jones*, 78 A.D.2d 423 (N.Y. 1981).

We conclude that in this case, Hegner had a duty to invest the accumulated estate funds. As previously noted, Hegner was appointed administrator of Kugler's estate in 1967. The estate inventory revealed that Kugler had invested approximately $41,000 in interest-bearing investments, which Hegner withdrew. After Hegner liquidated the estate assets and paid administration expenses, the estate had approximately $62,000 in cash, which Hegner apparently deposited in non-interest bearing checking accounts.

It was not until 1974–76 that Hegner made partial distributions of the estate funds. At no time during his eight-year term as administrator did Hegner take steps to invest any of the funds not needed to pay administration expenses. None of the special circumstances noted above, including the economic conditions of the marketplace, justified allowing those funds to lie idle. Because Hegner breached his fiduciary duty, the trial court did not abuse its discretion in imposing a surcharge against Hegner for interest lost to the estate because of his breach.[5]

---

[5] In his brief to this court, Hegner argued that he did not have a duty to invest accumulated estate funds in interest-bearing investments. At oral argument, however, Hegner conceded that he had such a duty.

*Determination of Surcharge Amount*

Hegner contends that if an administrator is charged with interest because he or she allowed estate funds to lie idle, the appropriate interest rate to utilize in determining the surcharge amount is the 5 percent legal rate set forth in sec. 138.04, Stats.[6] Hegner therefore argues that the circuit court erred in determining the surcharge amount based on interest the estate could have earned from 1968 to 1981 had the investment been alternated between a passbook savings account and treasury bills. At trial, a bank trust investment officer testified concerning the amount of interest the estate could have earned had the accumulated funds been invested at a 5 percent interest rate, a 6 percent interest rate, at a passbook savings rate, and at rates ranging from 4.5 percent to 14.8 percent had the funds alternately been invested between a passbook savings account and treasury bills. The officer indicated that at the time Hegner served as administrator, a prudent investment would have been a combination of a passbook savings account and treasury bills. This testimony was undisputed.

We have not previously considered how an interest surcharge assessed against an administrator who allows estate funds to lie idle should be determined, or the appropriate interest rate to utilize in calculating the surcharge. Courts in other jurisdictions that have considered these issues have generally concluded that the determination of the rate of interest to surcharge an administrator who has breached his fiduciary duties is

---

[6] Section 138.04, Stats., provides: "**Legal rate.** The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in ss. 138.041 to 138.056, 138.09 to 138.12, 218.01 or 422.201, in which case such rate shall be clearly expressed in writing."

within the trial court's discretion. *See, e.g., Estate of Vaughn,* 461 A.2d 1318, 1321 (Pa. Super. 1983); *People's State Bank & Trust Co. v. Hodgkin,* 287 S.W.2d 425, 426 (Ky. 1956); *Estate of Baldwin,* 18 N.W.2d 827, 836 (Mich. 1945). In addition, Restatement (Second) of Trusts, sec. 207 (1959), which deals with a trustee's liability for interest, provides in part: "(1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or *such other rate as the court in its sound discretion may determine . . . .*" (Emphasis added.) Comment c. to the Restatement (Second) of Trusts, sec. 181 (1959), concerning a trustee's duty to make trust property productive, states in part:

"In the case of money, it is normally the duty of the trustee to invest it so that it will produce an income . . . . If the trustee commits a breach of trust in neglecting within a reasonable time to invest the money, he is chargeable with the amount of income which normally would accrue from proper trust investments . . . ."

The primary reason for imposing an interest surcharge on an administrator who has breached the duty to make the estate productive by allowing estate funds to lie idle is to compensate the estate for losses incurred due to the administrator's breach. The amount of those losses is necessarily dependent upon the facts and circumstances of a particular case. To automatically restrict the interest rate that may be utilized to calculate the surcharge in any given case to the 5 percent legal rate of interest set forth in sec. 138.04, Stats., would not necessarily result in an estate receiving full compensation for losses incurred due to an administrator's breach of duty. In addition, there is nothing in the language of sec. 138.04 to indicate that it must govern the rate of

interest used to calculate a surcharge imposed on an administrator who breaches his or her duty to make the estate productive by allowing estate funds to lie idle.[7]

---

[7] Hegner cites *In re Thurston*, 57 Wis. 104, 15 N.W. 126 (1883), *Taylor v. Hill*, 87 Wis. 669, 58 N.W. 1055 (1894), *Abrams v. U.S. Fidelity & Guaranty Co.*, 127 Wis. 579, 106 N.W. 1091 (1906), *Guardianship of Kueschel*, 247 Wis. 253, 19 N.W.2d 178 (1945), and *Will of Kalicicki*, 33 Wis. 2d 277, 147 N.W.2d 343 (1967), to support his assertion that the 5 percent legal rate of interest is the proper rate to use in calculating an interest surcharge imposed on an administrator. We note, however, that those cases did not involve the imposition of a surcharge on an administrator who had breached the duty to make an estate productive. With the exception of *Kalicicki*, the cases Hegner cites addressed the duty of a guardian to invest the funds of his or her ward to earn interest on those funds. In *Thurston*, we held that if a guardian fails to invest the funds, he or she is chargeable with simple interest at the legal rate. In *Taylor*, we held that if a guardian's failure to invest was due to neglect of duty, and was not the result of fraud or intentional misconduct, the guardian should be charged with simple interest. No specific interest rate was cited, however. In addition, neither *Abrams* nor *Kueschel* held that the 5 percent legal rate is the appropriate rate of interest to use in calculating an interest surcharge assessed against a guardian who breaches his or her fiduciary duties.

In Kalicicki, the trial court had assessed compound interest at the rate of 5 percent against the son of a decedent who obtained a loan from the decedent and had engaged in misrepresentation in securing that loan. We held that it was error to assess compound interest, citing the general rule applicable to a fiduciary that calls for an assessment of simple interest for breaches of duty except those characterized by fraud or a wilful breach, gross negligence or a violation of a primary duty. We did not address the rate of interest that the trial court assessed, however, and did not hold that a 5 percent rate was the appropriate rate to use in calculating an interest surcharge imposed when a fiduciary has breached his or her duties.

As we have indicated in this opinion, the primary reason for assessing an interest surcharge against an administrator who breaches the duty to make the estate productive is to compensate the estate for losses sustained because of the breach.

We therefore conclude that in order to best accomplish the purposes served by an interest surcharge, the determination of the surcharge amount and interest rate used to calculate the amount assessed against an administrator when he or she has failed to make *any* reasonable investment of accumulated estate funds must be left to the trial court's discretion. In exercising this discretion, factors to be considered include, but are not limited to, the following: the administrator's knowledge, background and experience; the secure investment options available during the time the administrator managed the estate funds, and the interest rates available from those investments at that time; and the amount of available liquidated estate funds in excess of funds needed to pay current estate claims and administration expenses, or to meet other foreseeable contingencies.

Under the circumstances in this case, we conclude that the circuit court did not abuse its discretion in calculating the surcharge amount based on what the estate could have earned had the funds been invested alternately between a passbook savings account and treasury bills. A passbook savings account and treasury bills are both fully secure, low-risk investments. The trust officer, whose testimony was undisputed, testified that both types of investment could have been liquidated and distributed upon twenty-four hour's notice for use and distribution by the administrator. In addition, as previ-

---

This purpose may not necessarily be served by imposing an absolute requirement that the 5 percent legal rate of interest be used in every case to determine the surcharge amount. For purposes of this decision, we think the better rule is to leave the determination of the surcharge amount assessed against an administrator, and the interest rate used to calculate that amount, to the circuit court's discretion, after considering the relevant facts and circumstances of the particular case.

ously noted, some of the estate assets that Hegner liquidated and failed to reinvest included approximately $41,000 that Kugler had invested in interest-bearing investments, such as certificates of deposit and U.S. savings bonds. Given Hegner's experience as an attorney, the large amount of cash in the estate, Hegner's complete failure to invest in *any* type of secure, interest-bearing investments, the lengthy delay in closing the estate, the secure investment options available at the time Hegner served as administrator, and the undisputed testimony that a prudent investment would have been to alternate the funds between a passbook savings account and treasury bills, the imposition of a surcharge based on interest rates that could have been earned by alternating investment of the estate funds between a passbook savings account and treasury bills was a reasonable exercise of the circuit court's discretion.

*Interest Charge For 1976–1981 On The Interest Charge For 1968–1976*

Hegner contends that the circuit court erroneously included as part of the surcharge $18,702 in interest that could have accrued during Manders' term as administrator (1976–81) on $33,818 in interest that could have been earned during Hegner's administration (1968–76). Hegner argues that the respondents are guilty of laches because they waited until 1979 to pursue their claim against Hegner. Hegner also contends that the $18,702 amount is attributable to Manders' taking more than five years to close the estate, and that Hegner should not have to bear the cost of the delay in closing the estate that occurred after he was removed as administrator. We disagree.

We conclude that the circuit court did not abuse its discretion in including an amount to reflect interest that

could have accrued from 1976–81 on the $33,818 in interest that could have accrued between 1968–76 had Hegner invested the funds. If Hegner had fulfilled his fiduciary duty to invest the estate funds, the estate could have earned $33,818 in interest during Hegner's term as administrator. At the time Hegner was removed as administrator, he could have turned over the $33,818 to Manders, which amount could have accrued interest during Manders' term as administrator. In addition, as previously noted, part of the estate assets that Hegner liquidated included approximately $41,000 that Kugler had invested in interest-bearing investments. Most of these funds were not needed to pay estate claims or administration expenses. Had Hegner simply maintained those investments during his administration, he could have turned over to Manders the interest earned on those investments. By breaching his fiduciary duty, Hegner turned over no interest, thereby depriving the estate of the opportunity to earn interest on the interest that could have accrued had Hegner not breached his fiduciary duty.[8] The circuit court therefore could reasonably include the $18,702 in interest as part of the total surcharge to compensate the estate for losses due to Hegner's breach of his fiduciary duty and to make the estate whole.

We also reject Hegner's assertion that he should not be assessed the $18,702 in interest because the beneficiaries were guilty of laches in pursuing their claim for lost interest. In 1976, the probate court ordered Hegner to show cause why he had not filed a final account. He was

---

[8] Even if Hegner had turned over interest to Manders and Manders had immediately distributed the interest to the beneficiaries, the beneficiaries could have invested their respective shares and earned interest on that amount. They were totally deprived of this opportunity, however, because Hegner breached his fiduciary duty and turned over no interest to Manders.

also ordered to turn over all records in his possession so that Manders could prepare a complete and accurate accounting for the estate. The record indicates that Hegner failed to turn over any cancelled checks, bank statements, deposit slips or other bank records necessary to prepare a complete accounting. The beneficiaries therefore could make no definite calculation at that time of interest lost to the estate.

From 1976 to 1979, the record indicates that Hegner failed to turn over any cancelled checks, bank statements, deposit slips or other bank records, even though he had a continuing obligation to turn over complete records. Had Hegner simply maintained the investments during his administration that Kugler had made prior to her death, he would have had records pertaining to those investments that he could have turned over to Manders. In addition, from 1979 to 1982, closing of the estate was delayed due to litigation concerning the beneficiaries' objections to Hegner's administration of the estate. When Manders filed the petition for approval of the final account in 1979, the beneficiaries promptly filed their objections to the preliminary account filed in 1976. Thus, any delay in filing the objections to Hegner's administration was due not to the beneficiaries but, rather, was attributable to Hegner's continuing failure to comply with his obligation to turn over complete and accurate records concerning his administration.

Hegner also asserts that the $18,702 in interest assessed for the period from July 1, 1976, through December 31, 1981, constitutes prejudgment interest, and that the circuit court erred in allowing such interest. Hegner cites the general rule in Wisconsin that prejudgment interest may not be awarded when there is no " 'reasonably certain standard of measurement by which one can ascertain the amount he owes.' " *Jones v. Jenkins,* 88 Wis.

2d 712, 726, 277 N.W.2d 815 (1979), quoting *Wyandotte Chemicals Corp. v. Royal Electric Mfg.*, 66 Wis. 2d 577, 585, 225 N.W.2d 648 (1975). Hegner contends that at the time he was removed as administrator, there was a dispute concerning whether he owed any amount of interest to the beneficiaries, and that even if he did, there was no reasonably certain standard of measurement by which he could have ascertained the amount he owed at that time.

Interest that is awarded as an item of damages is ". . . compensation allowed by law or fixed by the parties for the use or detention of money, or allowed by law as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." C. McCormack, Law of Damages, sec. 50 at 205 (1935). In this case, the circuit court did not award the $18,702 as interest on an amount that the beneficiaries claimed Hegner owed them because of his breach of fiduciary duty; rather, the $18,702 represents part of the beneficiaries' total claim against Hegner for damages sustained. Because the $18,702 is not prejudgment interest awarded on the amount due the estate because of Hegner's breach but is, rather, part of the total amount due as damages, the cases Hegner cites that discuss prejudgment interest are not relevant to the issue of whether the circuit court properly included the $18,702 in interest as part of the total surcharge assessed against Hegner.

*By the Court.*—The decision of the court of appeals is affirmed.