IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Peter N. FLESSAS, Attorney at Law.

Supreme Court

*No. 94–2122–D. Oral argument February 2, 1996.—Decided February 19, 1996.*

(Also reported in 543 N.W.2d 807.)

For Peter N. Flessas there were briefs and oral argument by *Robert W. Flessas*, Brookfield.

For the Board of Attorneys Professional Responsibility there was a brief and oral argument by *Cynthia A. Lepkowski*, Greendale.

PER CURIAM. Attorney Peter N. Flessas appealed from the referee's conclusions that he engaged in professional misconduct in two matters and from the recommendation that his license to practice law be suspended for 90 days as discipline for that misconduct. As personal representative in an estate, Attorney Flessas sold the decedent's home to his own son at a price below its appraised value without having sought or obtained court approval, failed to disclose the purchaser's identity to the estate's attorney and to its sole heir and ignored other offers to purchase the property. In another matter, Attorney Flessas refused to endorse an insurer's settlement check for one year, claiming a fee in the matter, notwithstanding that the injured person informed him within one week of her initial contact that she did not wish to retain him. He also refused the woman's attorney's offer to place the amount he claimed as a fee in escrow and have his claim arbitrated so that the woman could receive her portion of the settlement proceeds.

We determine that the referee's conclusions that Attorney Flessas engaged in professional misconduct in these two matters are supported by the facts properly found and that none of Attorney Flessas' allegations of impropriety in the conduct of the disciplinary proceeding has merit. The seriousness of Attorney Flessas' professional misconduct established in this proceeding warrants the suspension of his license to

practice law for 90 days. Particularly serious is Attorney Flessas' violation of his fiduciary duty to the estate and its heir in order to provide a financial benefit to a member of his own family. That misconduct is exacerbated by the fact that the estate's heir, who was financially harmed by it, was a needful person whose medical condition diminished his ability to protect his own interests.

Attorney Flessas was admitted to practice law in Wisconsin in 1954 and practices in Milwaukee. He has not previously been the subject of an attorney disciplinary proceeding. The referee, Attorney Kathleen Callan Brady, made findings of fact based on the testimony and evidence presented at a lengthy disciplinary hearing.

On March 11, 1991, a woman Attorney Flessas had represented for many years in income tax and other matters died. The woman had spent the last 10 years of her life in a nursing home and her son, who was 61 years old at the time of her death, resided in her home, as he had all his life. The son was a diagnosed paranoid schizophrenic and had suffered several breakdowns requiring hospitalization. His sole source of income was Social Security and disability benefits.

Shortly before the woman's death, a couple who lived near her home had asked Attorney Jerome Iverson, the woman's guardian, whether the house would be put up for sale. When advised that it probably would, the couple submitted an offer to purchase on March 5, 1991 for $60,000 cash, subject to inspection of the premises. Attorney Iverson sent that offer to Attorney Flessas, who, consistent with the provisions of the woman's will he had drafted, had been appointed personal representative of the estate and retained Attorney Iverson as its attorney. The estate's principal

asset was the decedent's home in Wauwatosa, a suburb of Milwaukee.

Soon after submitting the offer, the couple went with Attorney Flessas to see the property but the son refused to let them in. The next day, when again refused admittance into the house, Attorney Flessas telephoned the police, who removed the son and had him transported by ambulance to the county mental health center.

In mid-March, 1991, Attorney Flessas had the property appraised. Following inspection, the real estate appraiser valued the home at $59,500. Because of the son's neglect, the house was filthy and in poor repair: the furnace had been shut off, burst water pipes had caused water damage, and substantial amounts of human waste and garbage had accumulated. The appraiser also gave an estimate of the costs of repairs in the amount of $11,900.

Following the son's removal from the property, Attorney Flessas visited the home with his son, John, who was in the business of rehabilitating properties and managed his own rental properties. The man who had made the offer to purchase the property viewed the interior of the house with them and discussed its condition with John Flessas and the possibility of their purchasing it together for $40,000, cleaning and reselling it and splitting the profit. After discussing with John Flessas the terms to be included in an offer, the man's wife, who worked for a realty firm, prepared an offer to purchase naming only herself and her husband as the purchasers and delivered that offer to the office where John Flessas ran his management business. That offer, dated March 22, 1991, was for $40,000 cash, with closing in 30 days. Attorney Flessas, who knew of

the joint venture between the couple and his son, disregarded that offer.

On March 26, 1991, John Flessas prepared an offer to purchase the property for $41,000, with closing in 120 days, naming as purchaser a long-time neighbor and childhood friend who was a carpenter. John Flessas and the friend had agreed to rehabilitate the property, with John Flessas financing the cost, and resell it, using the proceeds to pay the purchase price and splitting the balance. The offer required the estate to pay all expenses of the property prior to sale. Attorney Flessas accepted that offer on March 28, 1991, without advertising the property, listing it with a broker or otherwise actively marketing it.

On April 1, 1991, the couple, unaware of the offer submitted in the name of the friend, prepared a third offer, without John Flessas' participation, on terms of $47,500 cash, with closing in 30 days. The couple sent that offer to Attorney Flessas' law office by certified mail and telephoned him that they had done so. That certified letter was returned to the couple unclaimed after an unsuccessful attempt at delivery and two notices of it having been sent to Attorney Flessas' office. Attorney Flessas did not respond to the offer, which he testified he never received.

Following acceptance of the offer submitted in the name of his son's friend, the friend worked on the property, cleaning and repairing it and doing some remodeling, for which he was to receive from John Flessas a $1000 per week draw for five weeks. Attorney Flessas himself paid the friend one of those draws, which he and his son testified was merely for the son's convenience.

On June 25, 1991, Attorney Flessas had his son's friend sign an assignment of offer to purchase giving all

of his interest in the property to John Flessas. The friend testified that he understood the purpose of the document merely to include John Flessas' name on the title to the property. When rehabilitation and remodeling were completed, the property was sold July 19, 1991 for $96,200 and the sale from the estate to John Flessas closed at the same time. John Flessas subsequently reported a capital gain on the property of $33,196.

Attorney Flessas did not disclose to the probate court his sale of the decedent's home to his son or seek court approval of the sale, even though it was at a price below the appraised value. He also did not disclose to the estate's attorney that the purchaser was his son and did not advise the decedent's son of the purchaser's identity. When the probate of the estate was completed, the heir signed a receipt for approximately $9000, representing the estate's assets.

On the basis of those facts, the referee concluded that Attorney Flessas violated the rule established by this court's decision in *State v. Hartman*, 54 Wis. 2d 47, 194 N.W. 2d 653 (1972) and, thus, SCR 20:8.4(f),[1] by failing to seek court approval of the sale of the property to his son and failing to disclose the purchaser's identity to the estate's attorney and to the heir. The referee further concluded that Attorney Flessas engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of SCR 20:8.4(c),

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers;

. . .

. . . [2] by refusing to consider the offers to purchase submitted by the couple, by accepting an offer in which his son was the principal on less favorable terms and at a price below the appraised value of the property, and by failing to disclose to the heir that his son was the purchaser.

. . .

The other misconduct established in this proceeding concerns Attorney Flessas' refusal to endorse a settlement check in a personal injury matter. In March, 1992, two days after being injured in an auto accident, a woman telephoned Attorney Flessas at the suggestion of relatives who were friends of Attorney Flessas to discuss the matter. In that telephone call, Attorney Flessas advised the woman to see her doctor and obtain a wage statement from her employer, and he told her not to discuss the case and to have the insurance company call him. The following day, the woman telephoned Attorney Flessas to tell him she had seen her doctor and was told she could return to work. Attorney Flessas responded that she could not be well enough to go back to work and said he would call her within the week.

Attorney Flessas did not know the woman personally, never met with her to discuss her injury and did not have her sign a written contingent fee agreement for him to represent her in the matter. The day after the woman's first telephone call, Attorney Flessas sent

---

[2] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . .

210

the insurance company involved a notice of retainer and claim for attorney's lien, advising that his law office had been retained to represent the woman.

Approximately one week thereafter, the woman telephoned Attorney Flessas' office and left a message that she would not be using Attorney Flessas' services but would handle the matter herself. One week after that, the woman retained Attorney Douglas Keberle to represent her, signing a written retainer agreement setting forth a contingent fee. On May 5, 1992, the insurer sent Attorney Flessas a letter stating that it had received a letter of retainer from another attorney and that one of them must withdraw. Attorney Flessas did not respond to that letter.

Attorney Keberle settled the client's claim and in March, 1993, the insurer issued a settlement check for $9000 payable to him, the client and Attorney Flessas, as the latter had not withdrawn his claim of attorney's lien. Following discussions with Attorney Keberle and at his request, Attorney Flessas prepared a statement setting forth four hours of services in the matter at a rate of $150, for a total of $600. Subsequently, claiming entitlement to a contingent fee, Attorney Flessas refused to endorse the settlement check and permit Attorney Keberle to place $600 of the settlement into escrow pending resolution of his claim for a fee. Attorney Flessas also refused Attorney Keberle's offer to have the fee matter arbitrated. Attorney Flessas did endorse the check on March 8, 1994, almost one year later and two days before it would have become void and after his conduct had been reported to the Board of Attorneys Professional Responsibility.

On the basis of those facts, the referee concluded that Attorney Flessas' claim of a contingent fee in the personal injury matter without having a written agree-

ment for it violated SCR 20:1.5(c).[3] The referee also concluded that Attorney Flessas failed to take proper steps to protect the woman's interests following her decision not to retain him by his refusal to endorse the settlement check, permit the escrow of the amount he was claiming as a fee and cooperate with fee arbitration, thereby depriving the woman of her settlement funds for almost one year.

As discipline for his professional misconduct in these two matters, the referee recommended that the court suspend Attorney Flessas' license to practice law for 90 days. The referee emphasized the seriousness of Attorney Flessas' violation of his fiduciary obligation as personal representative to the estate and the heir, noting particularly the heir's mental condition. Rather than protect and promote the heir's interests in the estate's assets, he exercised his authority as personal representative in favor of his own son, manipulating the sale of the property to benefit his son and himself, making no reasonable effort to offer the property for sale to anyone else or to obtain the best price available

---

[3] SCR 20:1.5 provides, in pertinent part:

**Fees**

. . .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

in the market. The referee found that Attorney Flessas "embarked upon a specific course of conduct which involved fraud, dishonesty, deceit and misrepresentation" in respect to the offers to purchase he ignored, his acceptance of the offer submitted in the name of his son's friend, and his conduct toward the decedent's son.

In the personal injury matter, the referee found that without a written contingent fee agreement, Attorney Flessas attempted to obtain a fee to which he was not entitled by asserting a lien that was unenforceable, as it did not conform to the statutory requirements. The referee also determined that, even if he had a claim for services actually rendered in the matter, Attorney Flessas' refusal to endorse the settlement check and permit the amount he claimed to be placed in escrow and settled by arbitration was improper and deprived the injured person of prompt receipt of her portion of the settlement.

None of Attorney Flessas' attempts in his appeal to justify his conduct in these matters or his attacks on the integrity of others involved in this proceeding has merit. His insistence that the woman injured in the automobile accident committed perjury when she testified that she had not retained him to represent her in the matter is based principally on the woman's having stated in her subsequent telephone call declining to retain him that she would be handling the matter herself, when in fact she retained another attorney to do so.

Likewise without merit is Attorney Flessas' contention that the woman's attorney was responsible for the delay in her receiving the settlement proceeds. Notwithstanding the absence of a written retainer agreement with the woman, Attorney Flessas continued to contend that he was justified in refusing the

attorney's offer to escrow the $600 he had itemized as a fee because an arbitrator might have awarded him more than that amount out of her attorney's contingent fee.

In this appeal, Attorney Flessas again argued that the referee was required to recuse herself because of a statement she was alleged to have made privately to the court reporter concerning dismissal of the proceeding, notwithstanding that the court previously decided this issue when Attorney Flessas filed a recusal motion in the course of the proceeding. The court denied that motion on the grounds that the procedural rules make no provision for interlocutory appeals in disciplinary proceedings and that the motion had no merit. Not only did the reporter refuse to sign an affidavit prepared by Attorney Flessas' counsel acknowledging the alleged statement; the reporter signed an affidavit denying that the referee had made the statement attributed to her and averring that it was Attorney Flessas' counsel who had made such a statement during a conversation he had initiated with the reporter.

Attorney Flessas also attempted to justify his sale of the estate's property to his son without considering other offers on the basis of an offhand remark made by the father of one of the offerors concerning the value of the property and his son's financial ability to purchase it. As the referee pointed out in her report, Attorney Flessas made no effort to inquire further into or ascertain the offeror's financial condition; indeed, he promptly accepted the offer submitted in the name of his son's friend, a person he considered personally and financially unreliable.

We also reject, as did the referee, Attorney Flessas' assertion that the estate was not harmed by the sale of the house to his son. Given the mental condition of the

estate's heir, Attorney Flessas' attempt to support that assertion by insisting that he never complained of the sale price is disingenuous.

We adopt the referee's findings of fact and conclusions of law in respect to Attorney Flessas' professional misconduct in these matters. The seriousness of that misconduct, particularly the use of his authority as personal representative to sell the estate's principal asset to his son only 17 days after the decedent's death at a price below the appraised value in a transaction in which his son's name had not been disclosed as offeror, thereby depriving the estate's heir of what could have proven to be the true value of the home, warrants a 90-day suspension of Attorney Flessas' license to practice law.

·IT IS ORDERED that the license of Attorney Peter N. Flessas to practice law in Wisconsin is suspended for a period of 90 days, commencing March 25, 1996.

IT IS FURTHER ORDERED that within 60 days of the date of this order Peter N. Flessas pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Peter N. Flessas to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Peter N. Flessas comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

WILLIAM A. BABLITCH, J., did not participate.