STATE, Plaintiff, v. HARTMAN, Defendant.

*No. State 83.   Argued February 1, 1972.—Decided
February 29, 1972.*
(Also reported in 194 N. W. 2d 653.)

48

For the plaintiff there were briefs and oral argument by *Robert H. Bichler* of Racine, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief and oral argument by *William L. McCusker* of Madison.

PER CURIAM. The defendant, Robert G. Hartman, has practiced law in Juneau, Dodge county, Wisconsin, since his graduation from law school in 1942, except for five years when he served honorably in the armed forces during and after World War II. He has been a successful lawyer, and the record indicates that, over the course of his professional career, he has served his clients competently and that there have been no previous charges of unprofessional conduct. In recent years his health has not been good, and a delay in the proceedings in the instant case was necessitated while the defendant was hospitalized.

The facts are substantially undisputed. The defendant was the attorney for Carol F. Cramer when on February 27, 1967, she executed a will naming the defendant as

the attorney and executor of her estate. The will provided that the defendant, as executor, have the power:

". . . to sell both real and personal property inventoried in my estate at public auction or at private sale, for such prices and upon such terms as my said executor may judge best. . . ."

Carol F. Cramer died on December 24, 1967. The will was admitted to probate, and letters testamentary were issued to the defendant. Included in the estate was a small two-story home in Beaver Dam. Two appraisers, M. M. Militzer and Glen Knaup, were appointed at the nomination of Hartman. This property was appraised at $15,000 and was listed in the inventory.

On September 30, 1969, the defendant conveyed the property to his wife, Helen Hartman, for a consideration of $15,000. He took in exchange an unsecured promissory note in that amount. Sometime in November 1969, Judge JOSEPH E. SCHULTZ, before whom the probate proceedings were pending, learned of the conveyance from Robert Hartman to his wife.

On November 11, 1969, Judge SCHULTZ ordered that the defendant appear before him on November 18, 1969, and show cause why he should not be removed as executor and attorney of the estate. At the hearing the defendant admitted the transaction but denied any wrongdoing.

He stated that the consideration for the sale was the appraised value, and he asserted that sometime earlier Judge SCHULTZ, in a telephone conversation with respect to another estate, had approved of the sale of real estate by an executor to his wife if the appraised value was paid. He acknowledged, however, that no efforts were made to sell to other parties. It was admitted that no notice of the sale to Helen Hartman had been given to any of the parties interested in the estate or to the guardian *ad litem* for minor heirs and legatees. Attor-

neys representing parties interested in the estate moved the court to set aside the sale and to order the property reconveyed and sold after advertising for bids. The defendant offered to reconvey the property.

Judge SCHULTZ found that the conveyance by the defendant Robert G. Hartman was the exercise of a power in bad faith. He was removed as executor and attorney in the estate. An administrator *de bonis non* was appointed. The property was subsequently reconveyed to the estate on December 31, 1969. The record is not clear whether Judge SCHULTZ ordered the reconveyance or whether it was done without the necessity of further court order. Subsequently, the property was sold for $18,165.

Complaint was made to the Board of State Bar Commissioners. Three charges of misconduct were filed against the defendant: (I) That the sale by the defendant as executor to his wife constituted unprofessional conduct; (II) that the defense offered, *i.e.*, that Judge SCHULTZ had previously authorized such transactions, was false; and (III) that the defendant as executor of the estate improperly shared in the broker's commission earned by Glen Knaup for selling a parcel of property in the Cramer estate (not the Beaver Dam house).

After the submission of the complaint to this court, it was ordered filed, and Judge C. BERNARD DILLETT was appointed as referee. A hearing was held before Judge DILLETT on April 29, 1971. Judge DILLETT concluded that Count II did not charge an offense separate from that alleged in Count I. Count II was based upon the premise that Robert Hartman had falsely asserted that he had received prior authorization for a similar transaction from Judge SCHULTZ. Also, Judge DILLETT concluded that, although Attorney Hartman's assertion in this respect was not to be believed, it was asserted as a defense to the allegations of Count I and therefore should

not be considered separately. He concluded that the facts alleged in Count III, the alleged fee splitting with the broker, Knaup, was a legitimate transaction and did not warrant discipline. Judge DILLETT accordingly found that defendant's conduct as alleged in Count I was unethical and unprofessional and recommended that discipline be imposed. He found that the facts alleged in Count III did not constitute unprofessional conduct and recommended that that count be dismissed.

Although the defendant acknowledges the sale of the property to his wife Helen, he contends that his conduct was neither improper nor unethical, since a sale of property or the conveyance of real estate to an executor is not ipso facto void. Sec. 316.41, Stats., provides:

"**Who not to purchase.** The executor or administrator making the sale or the guardian of any heir of the decedent shall not be interested in the purchase of any part of the real estate sold unless such sale is made with written consent of the parties concerned and of the guardian ad litem for minors and incompetents and approval of the court after notice and hearing, except where such purchase is authorized by the will of the decedent. . . ."

The statute was discussed by former County Judge GEORGE KRONCKE, JR., in *A Decade of Probate Law*, 1961 Wisconsin Law Review 82, 119:

"Purchase of trust assets by a fiduciary in his individual capacity is presumed fraudulent and is void at the election of the trust beneficiary. The court has also said that even the beneficiaries' consent might not validate the sale under certain circumstances. However, the practical problem of finding other buyers frequently made this rule a hardship upon the trust, so in 1951 the legislature enacted Chapter 275 which permits an executor, administrator or guardian to purchase fiduciary assets when approved by the court and all interested parties."

In the instant case no notice was given to any of the parties and no consent was given by the parties con-

cerned, and the sale was not approved by the court. Unless it can be argued that the sale was authorized by the will of the decedent, the defendant's conduct was in patent violation of the statute. The common law of Wisconsin, it is true, holds that such transactions are not ipso facto void, but merely voidable. *Will of Hoya* (1921), 173 Wis. 196, 205, 180 N. W. 940; *Melms v. Pabst Brewing Co.* (1896), 93 Wis. 153, 164, 66 N. W. 518. Even a cursory reading of these cases reveals that the rationale of the common law is to protect subsequent innocent purchasers for value. They in no way exonerated an original purchaser who enters into the transaction in violation of his fiduciary duties. Defendant's argument is specious and frivolous. As Judge DILLETT properly stated, whether the transaction was void or voidable is immaterial here. The question is whether the defendant's conduct as an executor was improper.

The statute prohibits, with the exceptions stated, a purchase in which the executor is interested. We stated, in *Estate of Scheibe* (1966), 30 Wis. 2d 116, 119, 140 N. W. 2d 196, that, ". . . an executor in all essential respects will be held to the responsibilities and the duties of a trustee . . . ." Restatement, 1 *Trusts* 2d, p. 364, sec. 170, deals with the duty of a trustee:

"Sec. 170. **Duty of Loyalty**

"(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

"(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know."

Under this standard (2) there is a gross breach of the fiduciary's duty when none of the beneficiaries of the estate have been advised of a transaction of this nature. The comments to the Restatement, 1 *Trusts* 2d, p. 366,

sec. 170, state, "If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself."

While the defendant is correct in his assertion that a sale to a relative of the executor or even to his spouse is not necessarily improper or unethical, it presumptively is unethical and can only be held to be proper if the safeguards of the statute have been strictly observed. Under any view of the law, a husband, because of the marriage relationship, is "interested" in his wife's property. 131 A. L. R. 990, 997, 999, discusses numerous cases wherein it has been held that a sale by an executor to a spouse stands on the same basis as a sale to the executor himself.

It should also be pointed out in this case that Helen Hartman's ability to pay for the property was completely dependent on the fact that Robert Hartman owed her a substantial sum of money which would have been available to, in part, pay for the real estate. Defendant was indeed "interested" in the sale to his wife.

Defendant also contends that the sale was proper because the consideration was for the appraised price. Had there been proper notice to the heirs, and were there evidence to show that there had been a reasonable attempt to sell the property and that $15,000 was a proper sale price, this would indeed be a factor in determining the propriety of the transaction. A fiduciary has the duty to sell the assets of an estate for the best price that can reasonably be obtained. The best test of this is the market.

In this case, however, the record reveals that the defendant did not make a good-faith effort to sell the property at a reasonable price. He acknowledged at one point that he made no effort at all to sell to other parties. At another point he permitted his then attorney to stipulate in open court that, although buyers had made overtures to purchase the property, they had been put off

by Robert Hartman. At another time he stated that he had talked to a realtor and told him that he could take his commission out of any sum that exceeded the appraised valuation. The evidence is clear and convincing that the defendant "made no effort of any kind to sell this property although he knew that many persons were interested in buying it." Such was the finding of the referee, and we conclude from the evidence that no reasonable effort was made to sell the property. The duty of an executor was set forth by this court in *Estate of Scheibe* (1966), 30 Wis. 2d 116, 121, 122, 140 N. W. 2d 196. We said:

". . . the executor did not act in a prudent and businesslike manner with a view to obtaining as large a price as he might with due diligence and attention have obtained. The executor failed in his trust."

An executor's trust is not discharged by selling at the appraised price unless there is evidence to show that was the best price that could be obtained in the exercise of reasonable diligence. While the defendant seeks to distinguish *Scheibe* on its facts, we see no distinction in the application of this principle. In each case the executor failed to discharge his trust.

In addition, Attorney Hartman contends that the clause in the will giving the executor power "to sell both real and personal property inventoried in my estate at public auction or at private sale, for such prices and upon such terms as my said executor may judge best . . . .":

". . . is equivalent to permission in the will for the executor to buy, or for a relative of the executor to buy, at the fair market value determined by court-appointed appraisers."

That interpretation is contrary to the plain meaning of sec. 316.41, Stats. The executors are not to be interested in the purchase of real estate except when the procedural safeguards of the statutes are observed or unless *"such*

purchase is authorized by the will of the decedent." (Emphasis supplied.) We deem this language to mean that, to exonerate the sale from the strictures of the statute, the will must specifically authorize the particular transaction by the executor. The general power to sell, as set forth in Carol Cramer's will, cannot lead to the conclusion that the testator authorized either Robert Hartman or his wife Helen to purchase the property.

We should also point out that, if defendant's interpretation of this clause were accepted, defendant's ethical problems would be compounded, since it is undisputed that the will was drafted by defendant and that will named Robert G. Hartman as *both* executor and attorney. We need not dwell upon additional ethical questions that might well be raised when the will drafted by an attorney permits self-dealing with the assets of an estate.

No question has been raised in these proceedings in respect to the propriety of the defendant drawing a will which names him as an executor, trustee, or lawyer. *See,* however, *Code of Professional Responsibility,* EC 5–6, 43 Wis. 2d xl (effective January 1, 1970).

In *Alexopoulos v. Dakouras* (1970), 48 Wis. 2d 32, 179 N. W. 2d 836, a similar bizarre rationale was urged. The attorney in that case was given a general power of attorney. The attorney-in-fact was authorized to perform all acts that the donor of the power could perform. The attorney-in-fact concluded that the power was tantamount to a gift, in that he had the same authority to dispose of the cash that the principal had were he present. We stated that an attorney-in-fact is a fiduciary and that the duty of the fiduciary is to act for the benefit of the principal. Where there is the assertion that any of the powers granted were to be exercised for the benefit of the fiduciary rather than the principal, specific authorization must be shown. As in the principal-agent relationship, a general authority to deal with assets or to sell is not sufficient to exculpate an executor of an estate from

a charge of self-dealing, and, in the case of an attorney, from a charge of professional misconduct.

Finally, the defendant argues that he acted in good faith because, in a previous estate for which he was the attorney, Judge SCHULTZ had approved a sale from an executor to his wife. The record is clear that in another estate probated in the Dodge County Court, the executor, Herbert Schwantes, conveyed estate land to his wife by a deed dated June 20, 1969. Robert Hartman contends that, before the deed was given by Schwantes to his wife, Hartman had a conversation with Judge SCHULTZ, who said it was all right if the executor got the appraised price and there was sufficient money to pay the creditors and expenses of administration. Judge SCHULTZ testified that the alleged conversation never took place and that his first knowledge of the sale of the Schwensow estate took place in the early part of 1970, a date *after* Hartman sold the Cramer estate property to his wife. The referee concluded that the conversation in which Judge SCHULTZ allegedly gave prior approval to the transaction in the Schwensow estate never took place.

While Judge DILLETT in his report to this court states, "Thus, it appears that there was precedent for Mr. Hartman's sale to his wife in the Cramer Estate," we can only conclude that Judge DILLETT meant that Hartman had been a party to this type of transaction at an earlier date. Judge DILLETT did not find that Judge SCHULTZ knew of the transaction in the Schwensow estate prior to the conveyance. It is thus apparent that Judge DILLETT did not state that any conduct of Judge SCHULTZ was precedent for the approval of Attorney Hartman's conduct in the Cramer estate. Moreover, were we to accept Hartman's version of the conversation, and we do not, all he asserts is that, in the *Schwensow* estate, he received the prior approval of the court. This is one of the requirements of sec. 316.41, Stats. It is undisputed that no information was given to Judge SCHULTZ prior to

the conveyance in the Cramer estate. Moreover, prior to the final judgment in the Schwensow estate, at least one of the attorneys interested therein, and knowing of the sale by the executor, stated that, on behalf of his clients, the final account was not objectionable.

The referee, although he concluded Hartman's testimony in this respect was false, elected not to consider the false assertion as a separate offense but merely one made in defense of the allegations of the first count. We conclude, however, that the defense asserted was false and frivolous, and aggravated rather than minimized his insensitivity to ethical relationships.

The referee recommends that Count III of the complaint be dismissed. That count involved a charge of fee splitting by the defendant with the realtor Knaup in the sale of another parcel of real estate in the Cramer estate. The property was sold for $14,800. The defendant received the purchase money and personally retained $444, one half of the broker's commission of $888. Defendant testified that he retained a portion of the commission because the realtor owed him for legal work that the defendant had performed at a prior time. Defendant produced an exhibit showing that he had received $444 from Knaup for legal services.

A review of the record shows that this very realtor, Glen B. Knaup, had been appointed an appraiser in the estate at the nomination of Robert Hartman. The relationship between Knaup and Hartman was described by Hartman:

"We sort of work together where he is a good procurer for me and I am a good procurer for him. As I recall offhand now I got him out of a charge against him by the State Board of Realtors . . . ."

Knaup did not testify at the hearing before the referee, although he had been subpoenaed to appear. The record

shows that, at the time of the hearing, he was out of the country.

The referee concluded that the conduct of Hartman in respect to the retention of a portion of the brokerage fees was no more than a "practical way for the defendant to collect an overdue bill for legal work." The referee accepted Hartman's explanation. However, this court is not obliged to do so. We stated in *State v. Eisenberg* (1970), 48 Wis. 2d 364, 371, 180 N. W. 2d 529, "The evidence adduced in a disciplinary proceeding is reviewed de novo in this court to determine if discipline should be imposed." Since Knaup was not present, the issue was not extensively tried at the hearing. We would be remiss in our duty, however, if we did not point out that the relationship between the executor and the realtor in this case is fraught with the possibilities of a breach of the fiduciary relationship of the executor and of the duty an appointed appraiser owes to the court. In this case, Knaup was the appraiser. At at least one juncture, Hartman asserted in respect to the Beaver Dam house that he told Knaup that his commission could be taken out of the overage above the appraised value. If the realtor's commission could be dependent in any way upon the appraisal which he gave to the court, it would be difficult for him to reconcile the court's interests in an impartial appraisal with his interests as a broker subsequently selling that property. Moreover, where, as here, Hartman acknowledged that they were good "procurers" for each other, it would be a temptation to put the personal interests of the executor or of the realtor ahead of the obligation to the estate as a fiduciary or to the court as an independent appraiser. In addition, Attorney Hartman used the estate assets as a source of funds for the collection of an alleged prior debt. Might there not be the temptation to hire a realtor for this very purpose rather than to hire one who could secure the best price

for the beneficiaries of the estate. Attorney Hartman's conduct in respect to the division of fees for the sale of the estate property and his defense of that conduct shows a callous disregard for ethical proprieties.

In the instant case Attorney Hartman paid the $444 that he had received from Knaup back into the estate. Accordingly, the services of Knaup were obtained for only half of what presumably was a reasonable fee. In addition, Attorney Hartman relinquished his claim on any fees as an attorney and executor, although he had previously claimed attorney's fees of $4,282.90 and executor's fees of $1,985.06. The prompt relinquishment of these fees has contributed substantially to making the estate whole for the damages it sustained as a consequence of Attorney Robert Hartman's conduct and has been considered by this court. The disgorgement of improperly obtained estate assets does not exonerate Hartman from culpability for the unethical conduct.

We are, moreover, concerned that a charge should have been made for services in the dual capacity of attorney and executor. He was entitled to but one fee and the dual charge could not have been approved. *Will of Fehlhaber* (1956), 272 Wis. 327, 330, 75 N. W. 2d 444.

We also consider that, heretofore, Attorney Hartman has been involved in no disciplinary proceedings of any kind. We are satisfied from the record that he is a competent lawyer and that the occasions where his competency has left something to be desired were the exception rather than the rule.

The breach of trust revealed by the record was nevertheless a serious one indeed. Moreover, we consider the fact that, despite these proceedings that have extended over a period of more than two years, the defendant remains completely insensitive to the unprofessional nature of his conduct. He seems completely unwilling to accept the fact that what he has done was not only damaging

to his client but is substantially below the standard that should be expected of members of a learned and honored profession. The entire public, as well as the bar, is aggrieved by his breach of standards of professional responsibility.

IT IS THEREFORE ORDERED AND ADJUDGED that the license to practice law in this state of Robert G. Hartman is suspended for a minimum period of ninety days and until restored by this court upon proper application for reinstatement. Robert G. Hartman shall pay the costs of this proceeding excluding the attorney's fees of counsel for the Board of State Bar Commissioners, and such costs shall be paid upon application for reinstatement.

IT IS FURTHER ORDERED that Robert G. Hartman notify his clients now represented by him in all matters involving the practice of law or all matters pending in any court of this state that his license to practice law in this state is suspended; and that the State Bar of Wisconsin notify the courts of record of these orders by sending each a copy thereof.