IN RE the ESTATE OF George J. STEVENS
a/k/a George F. Stevens:

Darren PIETTE, Appellant,†

v.

Lynda A. HORN and Diana F. Miller,
Respondents.

Court of Appeals

*No. 2014AP1688. Submitted on briefs March 17, 2015.
—Decided April 14, 2015.*

2015 WI App 41

(Also reported in 864 N.W.2d 900.)

† Petition for Review denied August 5, 2015.

484

On behalf of the appellant, the cause was submitted on the briefs of *Darren Piette*, pro se.

On behalf of the respondents, the cause was submitted on the brief of *Dennis M. Burgy* of *O'Brien, Anderson, Burgy & Garbowicz LLP*, Eagle River.

Before Hoover, P.J., Stark and Hruz, JJ.

¶ 1. STARK, J. Darren Piette, pro se, appeals an order approving the sale of real property owned by the Estate of George Stevens to Lynda Horn, one of the estate's personal representatives, and her son. We conclude the circuit court properly exercised its discretion by approving the sale. We therefore affirm.

## BACKGROUND

¶ 2. George Stevens and his wife, Myrene, were married for fifty-eight years. They had no children together. They both executed wills leaving everything to each other. The wills also contained identical provisions regarding the distribution of property in the event the other spouse died first. Specifically, the wills provided that twenty-five percent of the surviving spouse's estate would go to George's daughter, Horn. Horn's two children, Steven Horn and Nicole Horn Ansel, would each receive twelve and one-half percent of the estate. Twenty-five percent of the estate would go to Myrene's niece, Diana Miller. The remaining twenty-five percent of the estate would be divided equally between Myrene's other nieces and nephews. Piette, who was Myrene's nephew, fell into this class of beneficiaries and was therefore entitled to eight and one-third percent of the estate.

¶ 3. Myrene predeceased George, and, accordingly, all of her property passed to him. George subsequently died on June 7, 2013. On August 14, 2013, a petition for formal administration of George's will was filed in Oneida County. Horn and Miller were named personal representatives of George's estate.

¶ 4. George's estate contained an eighty-six-acre property located in Vilas County. The property, which had been used as hunting land, contained a 640-square-foot concrete block hunting cabin, several deer stands, and at least one pond.

¶ 5. Horn and Miller hired appraiser Peter Walls to value the Vilas County property as of the date of George's death. Walls initially valued an eighty-acre section of the property at $162,000 and the remaining six acres at $38,000, resulting in a total value of

$200,000 if the property were sold as two separate parcels. In response to a request by Horn, Walls subsequently opined that, if all eighty-six acres were sold as a single parcel, the value would be only $174,150. Thereafter, Horn and her son made an offer to purchase the property for $175,000. Horn sent the other beneficiaries a letter informing them of the offer and seeking their consent. Piette did not consent to the offer.

¶ 6. Horn and Miller then had the property reappraised. The second appraisal, done by Daniel Pudlo, valued the entire property at $132,000 as of January 28, 2014. Horn and her son then made a second offer to purchase the property for $150,000. Five days later, Horn and Miller petitioned the circuit court to authorize the sale of the property to Horn and her son, pursuant to Wis. Stat. § 860.13.[1] Piette objected to the petition, arguing Horn and Miller were required to offer the property for sale to the public; the property was worth more than $150,000; the sale would result in a financial benefit to Horn and her son at the other beneficiaries' expense; and the Pudlo appraisal was untrustworthy because Pudlo's wife, daughter, and son worked with Horn. Piette then had the property reappraised by Sullivan Appraisal Services, which valued it at $215,000 as of April 10, 2014.

¶ 7. The circuit court held an evidentiary hearing on Horn and Miller's petition to sell the Vilas County property on May 6 and 9, 2014. Pudlo was the only appraiser to testify during the hearing. He testified he valued the cabin on the Vilas County property using a cost approach and determined it was worth

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

$8,000. He then used a sales comparison approach to value the land itself. Pudlo explained the properties he used in his sales comparison analysis were comparable to the Vilas County property because, like the Vilas County property, they were enrolled in the managed forest land program and had limited access to public utilities.

¶ 8. In addition to providing testimony in support of his own appraisal, Pudlo also explained why he believed the Sullivan and Walls appraisals were too high. Specifically, he asserted the comparable properties used in the Sullivan appraisal were inappropriate because they included water features not present in the Vilas County property. For instance, one of the comparables used in the Sullivan appraisal had a half-mile of Wisconsin River frontage. Another comparable had 250 feet of lake frontage. Another included what Pudlo described as a "larger spring pond" that "could be classified almost as a small lake, a nonnamed lake." Another comparable had access to a canoeable creek. While the Sullivan appraisal stated the Vilas County property included four ponds, Pudlo noted the ponds were "natural seepage ponds" that did not always contain water. Based on aerial photographs, Pudlo testified three of the four ponds had vegetation growing in them, and only the largest pond had water in it.

¶ 9. With respect to the Walls appraisal, Pudlo opined that Walls had grossly overvalued the cabin on the Vilas County property at $36,000. Pudlo noted he had valued the cabin at $8,000, the Sullivan appraisal valued it at $10,000, and it was valued at $4,500 for property tax purposes. Pudlo also criticized Walls for valuing the eighty-six-acre property as two separate parcels. Pudlo explained the six-acre parcel that Walls

valued separately was necessary "to provide access to the 80 acres[,]" and without the six-acre parcel, the eighty-acre-parcel would "lose considerable value for lack of access."

¶ 10. At the close of the proceedings on May 9, the circuit court granted Horn and Miller's petition for sale, concluding, among other things, that the price offered by Horn and her son was reasonable and represented the fair market value of the property. The court's explanation for its decision spans twenty pages of the hearing transcript. The court subsequently entered a written order granting the petition to sell the Vilas County property. Piette now appeals.

## STANDARD OF REVIEW

¶ 11. Horn and Miller sought permission from the circuit court to sell the Vilas County property to Horn and her son, pursuant to Wis. Stat. § 860.13. Section 860.13 provides:

> The personal representative may not be interested as a purchaser, mortgagee, or lessee of any property in the estate unless the purchase, mortgage, or lease is made with the written consent of the persons interested and of the guardian ad litem for minors and individuals adjudicated incompetent or with the approval of the court after petition and hearing on notice given under s. 879.03 to all persons interested, or unless the will of the decedent specifically authorizes the personal representative to be interested as a purchaser, mortgagee, or lessee.

Here, it is undisputed that all interested persons did not give written consent to Horn's purchase of the Vilas County property, and George's will did not specifically authorize the sale. Accordingly, court approval of the sale was required.

¶ 12. The parties dispute the standard of review that applies to a circuit court's decision to approve a sale of estate property to a personal representative under WIS. STAT. § 860.13. To date, no Wisconsin appellate case has addressed this issue.[2] Piette seems to suggest we should independently review the circuit court's decision. Horn and Miller, in turn, argue we should review the court's decision for an erroneous exercise of discretion.

¶ 13. We agree with Horn and Miller. WISCONSIN STAT. § 860.13 gives a circuit court authority to approve a sale of estate property to a personal representative, but it does not list any criteria for the court to apply in making that decision. Thus, we are not presented with a situation in which a circuit court is asked to apply statutory language to a set of facts, which would present a question of law for our independent review. *See, e.g., Olivarez v. Unitrin Prop. & Cas. Ins. Co.*, 2006 WI App 189, ¶ 13, 296 Wis. 2d 337, 723 N.W.2d 131. When a statute grants a circuit court broad authority to act, without constraining the court's authority in any way, it makes sense to review the court's decision for an erroneous exercise of discretion.

¶ 14. Accordingly, we will uphold the circuit court's decision approving the sale of the Vilas County

---

[2] WISCONSIN STAT. § 860.13 has never been cited in a published opinion by a Wisconsin appellate court. The statute's predecessor, WIS. STAT. § 316.41, was cited in two published cases. *See State v. Hartman*, 54 Wis. 2d 47, 194 N.W.2d 653 (1972); *Good v. Starker*, 216 Wis. 253, 257 N.W. 299 (1934). However, neither case discussed the applicable standard of review.

property to Horn and her son unless the court erroneously exercised its discretion. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 32, 324 Wis. 2d 703, 783 N.W.2d 294 (circuit court's discretionary decision will be affirmed unless court erroneously exercised its discretion). "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a demonstrably rational process to reach a conclusion that a reasonable judge could reach." *American Family Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶ 43, 319 Wis. 2d 397, 768 N.W.2d 729. Discretionary decisions may involve underlying questions of law and fact. *See Covelli v. Covelli*, 2006 WI App 121, ¶ 13, 293 Wis. 2d 707, 718 N.W.2d 260. We review any questions of law independently, but we will not disturb the circuit court's factual findings unless they are clearly erroneous. *See id.*

## DISCUSSION

¶ 15. We conclude the circuit court properly exercised its discretion by approving the sale of the Vilas County property. The court provided a reasoned analysis in support of its decision. It began by noting that some of the evidence Piette presented was not relevant to Horn and Miller's petition for sale. For instance, the court refused to consider allegations that Horn acted improperly before George's death while serving as his agent under a power of attorney and allegations that George was incompetent when he signed the power of attorney. The court also found that evidence as to whether George wanted the Vilas County property to remain in the family was irrelevant because George did not state any specific intentions regarding the

property in his will. Finally, the court stated the fact that Horn made distributions from payable on death accounts to the other beneficiaries when she was not required to do so was not relevant to the petition, except to the extent it tended to rebut an inference that Horn engaged in self-dealing. We agree with the circuit court that this evidence was, in general, not relevant to Horn and Miller's petition for sale of the Vilas County property.

¶ 16. The court then noted that WIS. STAT. § 860.13 allows the sale of estate property to a personal representative in three scenarios, but only the second was applicable in the instant case—namely, sale by approval of the court. The court observed that the cases cited by Piette—*Estate of Scheibe v. Learman*, 30 Wis. 2d 116, 140 N.W.2d 196 (1966), and *State v. Hartman*, 54 Wis. 2d 47, 194 N.W.2d 653 (1972)— predated the current version of § 860.13. The court also noted that, in those cases, "no notice [of the disputed sales] was given to interested parties" before the sales were completed. Thus, neither case presented a situation in which a personal representative sought court approval for a sale before the sale took place.[3] Finally, the court noted that, unlike the personal representatives in *Estate of Scheibe* and *Hartman*, Horn was a beneficiary of the decedent's will and would therefore receive a portion of the proceeds of any sale of the Vilas County property. Consequently, the

---

[3] As Piette points out, the circuit court also stated no valid appraisals were completed in *Estate of Scheibe v. Learman*, 30 Wis. 2d 116, 140 N.W.2d 196 (1966), and *Hartman*. We agree with Piette that this statement was incorrect. Nevertheless, we agree with the circuit court that *Estate of Scheibe* and *Hartman* are distinguishable, as explained in greater detail below. *See infra*, ¶¶ 25–29.

court reasoned it was in Horn's best interest to receive a higher price for the property.

¶ 17. The court next observed that, under the terms of George's will, Horn and Miller had authority to sell estate property either privately or publicly. The court then explained there was no evidence that offering the Vilas County property for sale publicly would have yielded an offer higher than $150,000. The court further concluded a higher offer was unlikely, in light of the Pudlo appraisal. The court also observed that listing the property for sale publicly would almost certainly increase the amount of time that elapsed until the property was sold, which would subject the estate to additional costs associated with holding the property.

¶ 18. The court also considered the physical character of the property, concluding its highest and best use was as hunting land. The court noted the property had no major improvements and had limited access to utilities. The court rejected Piette's assertion that the property could be sold as two separate parcels, accepting Pudlo's testimony that the eighty-acre parcel would lack access if separated from the six-acre parcel.

¶ 19. The court then discussed the various appraisals, concluding Pudlo's appraisal provided the best evidence of the property's value. The court agreed with Pudlo that the comparable properties used in the Sullivan appraisal were not actually comparable. The court also stated Pudlo's criticisms of the Walls appraisal were "appropriate and believable and explained by a man of 20 years' experience[.]" The court concluded, "When all is said and done I found the one appraiser [Pudlo] support[ed] his own appraisal and point[ed] out the shortcomings of other appraisals . . .

[and] I found those arguments and calculations to be reasonable and supported by the evidence, pictures, descriptions, maps."

¶ 20. Finally, the court noted that Piette was entitled to only about an eight percent share of George's estate. The court stated, "Should the act of an eight percent owner have control? .... [S]hould the minority control where this ends? Does the minority eight percent have control over whether or not legal fees and all these other costs I've mentioned should be borne by the people who have a bigger stake in it?"

¶ 21. As the preceding summary demonstrates, the circuit court gave a detailed explanation for its decision to grant Miller and Horn's petition for sale of the Vilas County property. Lacking any guidance from WIS. STAT. § 860.13 or case law, the court appropriately considered the following factors when approving the sale:

- The likelihood that the sale price would be higher than Horn's offer if the property were offered for public sale, balanced against the attendant delay and increased holding costs that would result from publicly listing the property for sale;

- The relative interests of Horn and Piette in the proceeds of the sale;

- The property's highest and best use;

- The property's physical characteristics and improvements;

- The various appraisals, and the expertise and credibility of the appraisers; and

- The lack of evidence of self-dealing by Horn.

The record shows that the court considered the relevant facts, applied a proper law, and used a demon-

strably rational process to reach a reasonable conclusion. *See Golke*, 319 Wis. 2d 397, ¶ 43.

¶ 22. Piette argues, for various reasons, that the circuit court improperly relied on the Pudlo appraisal.[4] He notes Pudlo's $132,000 valuation was "the only opinion to place such a low value on the land." He therefore argues "the preponderance of opinions supports the likelihood the property was sold for an amount less than the best obtainable." He also alleges Pudlo was biased, seemed "adversarial," and was "willing[] to put aside professional ethics and do things to please his client." In particular, he asserts Pudlo should not have been allowed to appraise the Vilas County property because some of Pudlo's family members worked with Horn. Because of these alleged "serious ethical and legal issues," Piette asserts everything "produced and or testified to by Pudlo" should be "disregarded and thrown out."

¶ 23. Piette raised these criticisms of the Pudlo appraisal in the circuit court. However, after reviewing the evidence, the court found that Pudlo—the only appraiser to testify at the hearing—credibly explained the basis for his valuation. The court also credited Pudlo's opinion that the Walls and Sullivan appraisals were too high. In addition, the court emphasized Pudlo's significant experience as an appraiser. Based

---

[4] Piette's appellate briefs raise numerous claims of circuit court error. However, his arguments often overlap, and many are inadequately developed. We have attempted to identify and address the main issues raised by Piette's appeal. To the extent we do not specifically address an argument, we reject it as insufficiently developed. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not review undeveloped arguments).

on these findings, the court concluded Pudlo's appraisal was "reasonable and supported by the evidence." The court's conclusion in this regard is supported by the record, and the court's finding that Pudlo's testimony was credible is not clearly erroneous. *See State v. Thiel*, 2003 WI 111, ¶ 23, 264 Wis. 2d 571, 665 N.W.2d 305 (we will not disturb a circuit court's findings of fact, including credibility determinations, unless they are clearly erroneous); *see also Bauer v. Piper Indus., Inc.*, 154 Wis. 2d 758, 764, 454 N.W.2d 28 (Ct. App. 1990) ("The weight and credibility to be given to the opinions of experts is uniquely within the province of the fact-finder.").

¶ 24. Piette also suggests the circuit court should not have approved the sale because the Vilas County property would have garnered a higher price had it been sold as two separate parcels. However, the court specifically found that the property needed to be sold as a single parcel due to access issues and the law regarding easement rights. This finding is supported by Pudlo's testimony and is not clearly erroneous. *See Thiel*, 264 Wis. 2d 571, ¶ 23.

¶ 25. Piette next argues Horn and Miller were required by law to market the Vilas County property to third parties. Without such public marketing, he contends the circuit court could not approve the sale to Horn and her son. Piette relies on *Estate of Scheibe* and *Hartman* in support of this proposition. However, neither of those cases is on point.

¶ 26. In *Estate of Scheibe*, the decedent's will granted the executor, Learman, full power to sell real estate "without special court authority." *Estate of Scheibe*, 30 Wis. 2d at 117. Learman had certain estate property appraised, and he then sold it to his sister for the appraised value, without offering the property for

public sale or notifying the beneficiaries. *Id.* at 117–18. One of the beneficiaries subsequently challenged the sale. On appeal, our supreme court stated "an executor with an unqualified power of sale must exercise the diligence and caution which a careful and prudent owner would observe in the sale of his own property." *Id.* at 120. The court concluded Learman failed to fulfill that duty because he did not offer the property for sale to the public, hire a real estate broker, or advertise the property for sale, and because he relied on a single appraisal as evidence of the property's value. *Id.* at 121.

¶ 27. In *Hartman*, an attorney disciplinary case, a testator executed a will naming Hartman as the attorney and executor of her estate. *Hartman*, 54 Wis. 2d at 49–50. The will granted Hartman general authority to sell real and personal property. *Id.* at 50. After the testator died, certain real property in her estate was appraised at $15,000. *Id.* Hartman subsequently sold the property to his wife for an unsecured promissory note worth $15,000. *Id.* No notice of the sale was given to the beneficiaries, and Hartman did not receive court approval for the sale. Our supreme court concluded this transaction violated Hartman's duties as executor of the estate. Relying on *Estate of Scheibe*, the court stated, "An executor's trust is not discharged by selling at the appraised price unless there is evidence to show that was the best price that could be obtained in the exercise of reasonable diligence." *Hartman*, 54 Wis. 2d at 55. The court concluded Hartman did not make a good faith effort to sell the property at a reasonable price because he made no effort to sell to other parties, and he actually turned away potential buyers. *Id.* at 54–55.

¶ 28. As the circuit court pointed out, neither *Hartman* nor *Estate of Scheibe* addressed the circumstances in which a court may approve a sale of estate property to a personal representative under Wis. Stat. § 860.13. *Estate of Scheibe* did not cite or discuss the predecessor to § 860.13, Wis. Stat. § 316.41. While *Hartman* cited § 316.41, that statute prohibited an executor from being "interested in the purchase of" estate property without both "written consent of the parties concerned . . . and approval of the court after notice and hearing[.]" *See Hartman*, 54 Wis. 2d at 52. Conversely, the current statute permits a personal representative to purchase estate property if he or she receives either consent of all interested parties or court approval. *See* § 860.13.

¶ 29. In both *Hartman* and *Estate of Scheibe*, the disputed sales were completed without notice to interested parties or court approval, and they were only challenged after the fact. Here, Horn and Miller sought consent from all beneficiaries for the sale to Horn and her son, and, failing that, they asked the circuit court to approve the sale. Piette now challenges the court's decision permitting the sale. We have already concluded the court properly exercised its discretion, having considered the relevant facts, applied the proper law, and used a demonstrably rational process to reach a reasonable conclusion. Thus, this case is not analogous to *Hartman* and *Estate of Scheibe*.

■

¶ 30. Piette next contends Horn and Miller breached their fiduciary duties as personal representatives of George's estate. In particular, he asserts they

500

engaged in self-dealing by failing to perform their duties in good faith and breached their duty of loyalty and their duty to exercise care. As evidence of these breaches, Piette asserts:

- Horn and Miller gave Horn and her son exclusive bidding rights to the Vilas County property;

- Horn called Walls to complain that his initial appraisal was too high;

- Horn and Miller failed to market the property to third parties;

- Horn and Miller sought court approval for the sale after receiving only one offer;

- Horn put off a potential buyer who expressed interest in the property;

- Horn and her son lowered their offer from $175,000 to $150,000;

- Horn, who was George's agent under his power of attorney, failed to provide records and an accounting of financial transactions that took place before George's death and also failed to provide his medical records upon Piette's request;

- Horn and Miller provided incomplete or inaccurate information to the other beneficiaries when they first notified them of the offer to purchase the property.

¶ 31. However, as Horn and Miller point out, nearly all of this evidence is irrelevant to the issue of whether the circuit court properly allowed Horn and her son to purchase the Vilas County property for $150,000. After reviewing the evidence, the circuit court accepted Pudlo's opinion that the property was

501

worth $132,000. Based on Pudlo's appraisal, and the offer by Horn and her son, the court reasonably determined the property had a fair market value of $150,000. The court further determined it would not be in the beneficiaries' best interest to market the property to third parties because doing so would likely delay any sale, and in the interim the estate would continue to incur expenses associated with holding the property. The court also noted there was no guarantee the estate would receive an offer higher than $150,000, and, given Pudlo's appraisal, that possibility seemed unlikely. Piette does not explain how any of the alleged misconduct by Horn and Miller invalidates these findings and conclusions.

¶ 32. Moreover, the circuit court had a reasonable basis to conclude Horn did not engage in self-dealing. First, the court noted Horn had an interest in receiving the highest possible value for the property because she was entitled to a percentage of George's estate. Second, the court credited evidence that Horn distributed proceeds of payable on death accounts to other beneficiaries when she was not required to do so. Third, the court noted that Horn's second offer to purchase the property was $18,000 more than the Pudlo appraisal. Based on this evidence, the court could reasonably find that Horn's conduct regarding the Vilas County property did not amount to self-dealing.

■

¶ 33. In a largely undeveloped argument, Piette also claims the circuit court violated his right to due process. In particular, he asserts some statements the circuit court made in its oral ruling and written order were not supported by the evidence. He also suggests

the manner in which the court conducted the hearing shows that the court was biased against him. As discussed above, we conclude the factual findings necessary to the circuit court's decision are supported by the record and are not clearly erroneous. Other statements alleged by Piette to be false, such as the court's belief that George and Myrene honeymooned at the Vilas County property, were not relevant to the court's decision. Further, the court's conduct during the hearing does not reveal any bias against Piette. We therefore reject Piette's due process argument.

¶ 34. Finally, in addition to arguing the circuit court erred by granting Horn and Miller's petition for sale of the Vilas County property, Piette also asks us to "[o]rder the [power of attorney] and medical records to be turned over and be authenticated[,]" "[r]emove Miller and Horn as [personal representatives,]" and "[o]rder the [circuit court] to take action on [Piette's] petitions [to remove the personal representatives and compel production of documents] or transfer the case to a new venue." Piette asserts he requested this relief in the circuit court, but the court failed to address his requests. However, the circuit court did not need to rule on these additional issues in order to make a decision on Horn and Miller's petition for sale. In addition, Piette's appellate arguments regarding these issues are not well developed, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not review undeveloped arguments), and the current state of the record does not permit us to consider his requests. Piette is free to raise these

additional arguments at the circuit court level in continued proceedings regarding the administration of George's estate.

*By the Court.*—Order affirmed.