COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1703**

Cir. Ct. No. **2015PR113**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE ESTATE OF FAITH MIRIAM LOWELL:

FAITH A. LOWELL,

    APPELLANT,

V.

PATRICIA HAMMARBACK, PERSONAL REPRESENTATIVE OF THE ESTATE OF FAITH MIRIAM LOWELL,

    RESPONDENT.

APPEAL from a judgment of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Faith Ann Lowell, pro se, appeals the judgment closing the probate estate of her mother, Faith Miriam Lowell.[1] Faith Ann argues the circuit court erred by: (1) awarding $8500 in attorney's fees to counsel for the estate; (2) concluding that the personal representative of the estate, Patricia Hammarback (Faith Ann's sister), and counsel for the estate did not engage in various forms of misconduct; (3) allowing an online auction for the sale of artwork belonging to the estate and allowing Patricia to personally bid on that artwork; and (4) delaying in making various determinations related to certain real property located in Minnesota that was improperly included in the initial estate inventory.[2] We reject Faith Ann's arguments and affirm.

## BACKGROUND

¶2 Faith Miriam died on November 12, 2015. In her will, she left her estate to her three surviving daughters: Faith Ann, Patricia, and Jane LaRoque. The will named Patricia as personal representative of the estate.

¶3 On December 21, 2015, Patricia filed an application for informal administration of the estate in the St. Croix County circuit court. Approximately three weeks later, Faith Ann submitted a "waiver and consent" form in which she consented to Patricia's appointment as personal representative.

---

[1] Because Faith Ann and Faith Miriam share a surname, we will refer to them by their given names in this opinion.

[2] Attorneys Barry Hammarback (Patricia's husband) and David Sienko represented the estate during the probate proceedings. As with Faith Ann and Faith Miriam, we will refer to Patricia and Barry by their given names in this opinion due to their shared surname.

2

¶4 In August 2016, Patricia filed an inventory of the estate's property.[3] Faith Ann objected to the inventory, asserting that it omitted a substantial amount of artwork that had been completed by, and belonged to, Faith Miriam. Specifically, Faith Ann asserted that the inventory "omitted approximately 1,200 sketches." Faith Ann also objected to the inclusion of certain real property, located in Minnesota, in the estate's inventory on the ground that it had been gifted to her prior to Faith Miriam's death. Based upon these objections, Faith Ann requested that Patricia be discharged as personal representative and that the informal probate administration be converted to formal proceedings. *See* WIS. STAT. § 865.03 (2017-18).[4]

¶5 The circuit court granted Faith Ann's demand for formal administration and issued a scheduling order for "resolution of the inventory." In the same order, the court "held open" the request to remove Patricia as personal representative without scheduling any hearings or briefing on the issue.

¶6 The circuit court subsequently sustained both of Faith Ann's objections to the inventory. As relevant to this appeal, the court's decision regarding the Minnesota real estate recognized that although Patricia had "advanced several arguments" regarding the propriety of a 2014 transfer of the property from Faith Miriam to Faith Ann, it was undisputed that the transfer had, in fact, happened. The court therefore concluded that a separate action needed to

---

[3] Patricia moved for, and was granted, two extensions of time to file this inventory.

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

be commenced if Patricia wished to have the property "adjudicated as estate assets."

¶7 Based upon her sustained objections, Faith Ann then moved for an award of attorney's fees under WIS. STAT. § 879.37. In a written order, the circuit court granted her motion and awarded her $1500. In the same order, the court denied Faith Ann's motion to remove Patricia as personal representative. The court reasoned, in pertinent part, that although Patricia may have had a conflict of interest if she "commenced litigation over the Minnesota real estate … [her] counsel represented to the Court that no litigation has been filed or will be forthcoming."

¶8 Prior to the circuit court's written decision on Faith Ann's attorney's fees motion, Patricia had moved the court for an order allowing her to personally bid at an online public auction that she had scheduled for "all items of art contained in the Inventory." This motion was based on Patricia's recognition that "[u]nder WIS. STAT. § 860.13, [she could not] be a purchaser of the property unless there is Court approval."

¶9 Faith Ann responded by objecting to Patricia's decision to hold an auction. In support, she argued that "there simply is no evidence to support a conclusion that … an auction is even a reasonable way to dispose of the artwork. There is no evidence of value of the artwork. There is no evidence that auctioning off the artwork is the best way to sell artwork." In the alternative, Faith Ann argued that even if the court authorized an auction to be held, the court should deny Patricia permission to personally bid in order to prevent "an heir with more financial backing to receive property that could simply be divided among the heirs."

4

¶10   In a written decision, the circuit court granted Patricia permission both to hold the auction and to personally bid on items at the auction. Accordingly, the auction proceeded as scheduled and generated $18,943.80 in net proceeds to the estate.

¶11   Following the auction, Patricia petitioned the circuit court for a final judgment closing the estate. She submitted both a proposed final judgment and a final account of the administration of the estate in support of this petition. In her filings, she sought $8500 in attorney's fees to counsel for the estate and a $1000 personal representative fee. Faith Ann objected to this proposed final judgment, asserting "that the amount of the request for attorney fees is not supported as the actions of the [estate's] lawyers were almost fully inappropriate."

¶12   The circuit court ultimately granted Patricia's petition for final judgment, including her request for fees, and entered a final judgment closing the estate. Faith Ann now appeals.

## DISCUSSION

### I. Attorney's fees

¶13   We begin with Faith Ann's argument that the circuit court erroneously exercised its discretion by awarding $8500 in attorney's fees to counsel for the estate.[5] Circuit courts have the discretion to award reasonable fees

---

[5] We observe that Faith Ann's brief-in-chief contains many deficiencies. For example, her statement of the issues is neither well organized nor succinct, and she fails to support many of her factual and legal assertions with citations to the record or to any legal authority. *See* WIS. STAT. RULE 809.19(1)(d)-(e); *see also* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633

(continued)

5

to an attorney providing services for an estate. ***Bell v. Neugart***, 2002 WI App 180, ¶35, 256 Wis. 2d 969, 650 N.W.2d 52. We affirm discretionary decisions if they have a reasonable basis and apply the correct law to the facts of record. ***Id.***, ¶15.

¶14 WISCONSIN STAT. § 851.40 directs a circuit court to consider five factors in determining whether attorney's fees claimed to have been incurred during the administration of a probate estate are just and reasonable: (1) the time and labor involved; (2) the experience and knowledge of the attorney; (3) the complexity and novelty of the problems involved; (4) the extent of the responsibilities assumed and the results obtained; and (5) the sufficiency of the assets available to pay for services. Sec. 851.40(2)(a)-(e). Here, the court explicitly listed all of these factors in its written decision awarding attorney's fees. It then explained:

> After considering these factors, the Court is satisfied that attorney's fees of $8,500 are reasonable. Although this case was not particularly complex, it was extraordinarily time consuming. There were numerous hearings, many of which involved written briefs. The attorneys engaged in discovery and at least one deposition. The heirs disagreed about most aspects of the Estate, including the inventory, value, administration and distribution of assets, all of which involved the Estate's attorney, who successfully brought

---

(Ct. App. 1992) (appellate courts need not address arguments that are undeveloped or unsupported by legal authority). In addition, instead of filing a reply brief after receiving Patricia's response brief, Faith Ann sent this court a correspondence stating that "no further briefing is planned."

Nevertheless, we are mindful that we may afford pro se litigants leeway in appellate matters. *See **Waushara Cty. v. Graf***, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). Accordingly, we have identified Faith Ann's arguments as best as we are able to discern them and will address those identified arguments. To the extent that we have not identified an argument that Faith Ann intended to raise, however, that argument is deemed rejected. *See **State v. Waste Mgmt., Inc.***, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

the probate to a conclusion. Even putting aside the contentious litigation, the Estate needed to incur attorney's fees just to handle the administrative functions required by the Court, and the amount requested is roughly half the amount that was actually chargeable by Attorney [Barry] Hammarback and his former associate. Both attorneys are knowledgeable and were capable of handling an estate of this size and complexity. The Court sees no evidence that attorney's fees were generated unnecessarily. The Estate's assets will cover the attorney's fees, and the Court sees no basis for denying the distribution.

¶15     Faith Ann now argues that "it seems to [her] that misconduct and incompetence should prevent either attorney being paid except by [Patricia]." We are not persuaded.

¶16     The problem with Faith Ann's argument is that it ignores our standard of review. As indicated, we will uphold a circuit court's award of attorney's fees in probate proceedings as long as the court applied the facts of the case to the correct law to reach a reasonable decision. Here, as demonstrated by the above-quoted portion of the court's decision, the court applied the particular facts of this case to the proper statutory factors before awarding attorney's fees. Moreover, we do not perceive anything unreasonable in the amount of attorney's fees awarded. Consequently, we conclude the court did not erroneously exercise its discretion by awarding $8500 in attorney's fees to counsel for the estate.

## II. Alleged misconduct and conflicts of interest

¶17     In a series of related arguments, Faith Ann raises various allegations of misconduct on the part of both Patricia and counsel for the estate. We address, and reject, each of these arguments in turn.

¶18     First, Faith Ann argues the court erred by failing to conclude Patricia and counsel for the estate committed a felony by submitting a fraudulent inventory

to the circuit court, contrary to WIS. STAT. § 943.39(3). As an initial matter, this argument fails because § 943.39(3) applies to criminal proceedings, not probate proceedings. *See* WIS. STAT. § 939.01. This court generally will not consider arguments unsupported by proper legal authority. *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322.

¶19 Nonetheless, to the extent that Faith Ann intends to argue that Patricia and counsel for the estate committed a civil act of fraud, we agree with Patricia that Faith Ann forfeited such an argument. This conclusion follows because the record demonstrates that Faith Ann failed to adequately raise such a claim in the circuit court. *See Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772 (stating that "[a] party must raise an issue with sufficient prominence that the trial court understands that it is called upon to make a ruling").

¶20 To explain, WIS. STAT. § 802.03(2) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[6] On appeal, Faith Ann fails to provide any record citations showing that she alleged fraud on the part of Patricia or counsel for the estate with particularity. Likewise, our own review of the record has not revealed any indication that the circuit court was called upon to make a determination as to whether Patricia or counsel for the estate engaged in an intentional fraud. We

---

[6] Because Faith Ann does not refute Patricia's assertion that WIS. STAT. § 802.03(2) applies in probate proceedings, we deem that particular point as conceded for purposes of this opinion. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (unrefuted arguments may be deemed conceded).

therefore deem Faith Ann to have forfeited any fraud claim. *See Schwittay*, 246 Wis. 2d 385, ¶16 n.3.

¶21 Second, Faith Ann alleges that counsel for the estate violated numerous provisions of the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys.[7] Based upon these alleged violations, she contends that the circuit court erroneously exercised its discretion by failing to remove counsel for the estate and by failing to award Faith Ann attorney's fees (beyond the $1500 in attorney's fees she recovered pursuant to her sustained objection to the initial inventory).

¶22 Faith Ann's allegations of misconduct fail because they are conclusory and unsupported by any record citation or developed legal argument. For example, in support of her conflict of interest claim, Faith Ann summarily asserts that "Barry Hammarback's personal interest in getting the auction money had him extending matters to harass myself illegally and unreasonably to take the heir's money." We decline to address this undeveloped argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶23 Third, Faith Ann appears to argue that the court erroneously exercised its discretion by failing to remove Patricia as personal representative of the estate. The removal of personal representatives is governed by WIS. STAT. § 857.15, which provides:

> The judge may accept the written resignation of any personal representative. When a personal representative is

---

[7] Specifically, Faith Ann points to SCR 20:1.1 (Competence), SCR 20:1.7 (Conflicts of interest current clients), SCR 20:1.9 (Duties to former clients), SCR 20:4.3 (Dealing with unrepresented person), and SCR 20:8.4 (Misconduct).

> adjudicated incompetent, disqualified, unsuitable, incapable of discharging the personal representative's duties, or is a nonresident of this state who has not appointed a resident agent to accept service of process …, the court shall remove the personal representative. When any personal representative has failed to perform any duty imposed by law or by any lawful order of the court or has ceased to be a resident of the state, the court may remove the personal representative. When grounds for removal appear to exist, the court on its own motion or on the petition of any person interested shall order the personal representative to appear and show cause why the personal representative should not be removed.

Whether to remove a personal representative for these statutory reasons is a matter within the court's discretion. *See **Bell***, 256 Wis. 2d 969, ¶28.

¶24 The thrust of Faith Ann's argument regarding her claim that the personal representative had a conflict of interest appears to be that because Patricia's "interests were materially adverse" to her own, the court should have granted Faith Ann's motion to remove Patricia. Once again, however, this argument ignores our standard of review. As with its decision regarding attorney's fees, the court provided a cogent explanation as to why it declined to remove Patricia as personal representative, stating:

> The Court does not see a conflict of interest that would interfere with Patricia's duties as personal representative. Had she commenced litigation over the Minnesota real estate, there probably would be. Patricia's counsel represented to the Court that no litigation has been filed or will be forthcoming. Based on those representations, the Court finds no conflict of interest that would justify removing Patricia as personal representative.

> … The Court is also satisfied that it will be able to hear and resolve any disagreements over the administration of the artwork and other assets. Removal of the personal representative is not necessary.

10

Because Faith Ann fails to explain how this decision constituted an erroneous exercise of discretion, we will not address this argument any further. *See Pettit*, 171 Wis. 2d at 646-47.

¶25 Finally, based upon all of her foregoing claims of misconduct, Faith Ann argues the circuit court erroneously exercised its discretion by declining to award her additional attorney's fees.[8] We disagree.

¶26 As Patricia notes, the circuit court's discretionary decision not to award Faith Ann additional attorney's fees is consistent with the general rule in Wisconsin—i.e., the American Rule—which prohibits the recovery of attorney's fees in the absence of a statute or agreement providing for such an award. *See Wolf v. Wolf*, 2009 WI App 183, ¶16, 322 Wis. 2d 674, 777 N.W.2d 119. That rule applies in probate proceedings. *Id.* And here, Faith Ann points to no statute or agreement that would entitle her to recover attorney's fees beyond the $1500 in fees she was already awarded. Consequently, we cannot conclude the court erroneously exercised its discretion in this regard.

## III. Sale of artwork

¶27 Faith Ann next argues that the circuit court erroneously exercised its discretion by allowing Patricia to hold an online auction of the artwork belonging

---

[8] We refer to "additional" attorney's fees in recognition of the fact that, as indicated above, the circuit court awarded Faith Ann $1500 in attorney's fees based upon her sustained objection to the initial inventory. That award, which we discuss further below, was undisputedly provided for by WIS. STAT. § 879.37.

11

to the estate.[9] She further contends that the court erroneously exercised its discretion by allowing Patricia to personally bid on the items included in the auction.

¶28 WISCONSIN STAT. § 860.01 provides a general grant of power to a duly appointed personal representative to "sell, mortgage or lease any property in [an] estate." And here, Faith Miriam's will specifically provided that, as the estate's personal representative, Patricia was "to serve without bond and with full power to sell, mortgage, or otherwise dispose of any or all of my assets, without obtaining court approval."

¶29 Despite this facially broad grant of authority allowing Patricia to dispose of the estate's property as she saw fit, the circuit court considered Faith Ann's objection to the online auction. And, after recognizing that "none of the proposed distribution plans [advanced by the heirs] were acceptable to everyone," the court ultimately determined that "when parties cannot divide tangible property, the property gets liquidated. Cash is easier to divide than property. Furthermore, the personal representative has a responsibility to administer the estate to maximize value and fairness to the heirs. A public auction is the best way to do it."

¶30 In light of the inherent difficulty in ascertaining the true market value of the artwork belonging to the estate, combined with the contentious nature of the probate proceedings, we perceive no basis to conclude that the circuit

---

[9] We observe that Faith Ann proposed a "round-robin selection" method of disposing of the estate's artwork, by which the heirs could take turns selecting the pieces they would like to receive. Under Faith Ann's proposal, any pieces not selected by the heirs would have then been made publically available at auction.

court's decision was unreasonable. We therefore cannot conclude that the court erroneously exercised its discretion in ordering the artwork sold at an online auction.

¶31 Likewise, we also cannot conclude that the circuit court erroneously exercised its discretion by allowing Patricia to personally bid at the online auction. WISCONSIN STAT. § 860.13 provides a circuit court with broad authority to approve a sale of estate property to a personal representative. *See Piette v. Horn*, 2015 WI App 41, ¶13, 362 Wis. 2d 484, 864 N.W.2d 900. Here, the court specifically referenced this statute and explained its decision to allow Patricia to bid in the auction as follows:

> Section 860.13 requires the personal representative to get permission to purchase property from the estate. This statute safeguards against insider dealing and self-serving transactions at the expense of the estate. The Court does not see the risk of such malfeasance with a public auction. A licensed auctioneer is conducting the auction. The public bidding will set the price, not the personal representative. Furthermore, prohibiting Patricia from bidding would be unfair. Faith Ann and Jane can bid to purchase their mother's artwork; Patricia should too.

This well-reasoned explanation shows that court applied the proper law to the facts of the case in order to reach a reasonable decision. We therefore affirm that decision, as we must.

## IV. Minnesota real estate

¶32 Finally, Faith Ann raises numerous arguments connected to Patricia's inclusion of the Minnesota real estate in her initial inventory. First, Faith Ann argues that because "real estate is governed by the state in which it is located," the circuit court had "no ability to put MN real estate into inventory

without an ancillary reach." Second, she appears to argue that the court unnecessarily delayed its decision that the Minnesota real estate should not have been included in the initial inventory. Third, she argues that because Patricia "gain[ed] from fraud" by submitting the "false inventory papers," Faith Ann is entitled to restitution under WIS. STAT. § 865.031. And finally, based upon her sustained objection to the initial inventory, she argues that the court should have awarded her $11,000 more (than the $1500 that the court did award her) in attorney's fees under WIS. STAT. § 879.37.

¶33 We reject Faith Ann's first three arguments because they are not properly before us. As indicated above, the circuit court ultimately sustained Faith Ann's objection to the inclusion of the Minnesota real estate in Patricia's initial inventory. Therefore, Faith Ann was the prevailing party on that issue and there is nothing for her to appeal. *See Commerce Bluff One Condo. Ass'n, Inc. v. Dixon*, 2011 WI App 46, ¶8, 332 Wis. 2d 357, 798 N.W.2d 264 ("[U]nder [WIS. STAT.] RULE 809.10(4), an appellant may only get review of non-final orders and rulings if those non-final orders and rulings are 'favorable to the respondent.'").

¶34 As to Faith Ann's argument regarding the sufficiency of the circuit court's $1500 award of attorney's fees, she merely states "my bills were [$]12,500 to the end of the Declaratory Judgment motion." Thus, as with her prior argument regarding the court's award of attorney's fees to counsel for the estate, she ignores the discretionary standard by which we review a court's award of attorney's fees. *See Wheeler v. Franco*, 2002 WI App 190, ¶6, 256 Wis. 2d 757, 649 N.W.2d 711 ("If the court concludes that the party is a prevailing party [under WIS. STAT. § 879.37], then the court may, but need not, award attorney fees. This decision calls for an exercise of discretion.").

14

¶35 The circuit court provided the following explanation for its $1500 award of attorney's fees:

> Having decided that attorney's fees are awardable under [WIS. STAT.] section 879.37, the Court must next decide the amount. The objection to the inventory was a narrow and straightforward matter, not a complicated one. It involved some investigation, briefing and court time. Considering these factors and the hourly rate generally paid to experienced attorneys in St. Croix County, the Court finds that $1,500 is fair and reasonable.

On this record—and in the absence of any developed argument from Faith Ann to the contrary—we discern no error in the court's discretionary award of $1500 in attorney's fees.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15